## PEOPLE v BRASIC

Docket No. 95173. Submitted June 7, 1988, at Grand Rapids. Decided
September 7, 1988.

Nicholas Paul Brasic, Jr., was convicted of felony murder at the
conclusion of a jury trial in the Kent Circuit Court, Robert A.
Benson, J. Defendant appealed.

The Court of Appeals *held:*

1. The corpus delicti of the instant offense, consisting of proof
that the victim is dead and that death was a result of some
criminal agency, was established independent of the evidence of
certain inculpatory statements defendant had made to several
prosecution witnesses. Evidence of these statements were prop-
erly admitted after the prosecution had established the corpus
delicti by presenting several relatives of Christine Marie Hon-
son, the victim, who testified they had not heard from nor seen
the victim since 1974, evidence of a lack of earnings history or
valid driver's license belonging to the victim after her disap-
pearance, and a witness who testified that, at the time he last
saw the victim, she was being beaten by defendant after she
refused to be sodomized by defendant.

2. The testimony of a witness who related that defendant had
told her that he had beaten and killed a girl in a van because
the girl would not comply with his demand for sex or oral sex
was sufficient to establish that the murder in this case was
committed in the course of a rape or attempted rape within the
meaning of the rape statute then in effect. The examining
magistrate did not abuse his discretion in binding over defen-
dant for trial on felony murder.

3. Venue was properly laid in Kent County on the basis of
either the testimony of the witness who related that the victim
was beaten at a site just north of Grand Rapids or on the basis

REFERENCES

Am Jur 2d, Appeal and Error § 623.5.

Am Jur 2d, Criminal Law §§ 411 *et seq.*

Am Jur 2d, Evidence §§ 526 *et seq.*

Am Jur 2d, Homicide §§ 4, 285.

Admissability of pretrial confession in criminal case—Supreme
Court cases. 22 L Ed 2d 872.

of the Attorney General's designation of Kent County as the venue after the prosecution could not readily establish where the crime was committed.

4. Defendant's claim that he was denied a fair trial due to the pretrial publicity is without merit.

5. Evidence of defendant's prior conviction for unarmed robbery was properly admitted for impeachment purposes.

6. Defendant was not prejudiced by remarks made by several witnesses regarding other crimes committed by defendant for which he was not charged. The remarks were inadvertent and unsolicited and the trial court gave cautionary instructions to the jury regarding the remarks.

7. Defendant was not denied effective assistance of counsel at trial. Counsel cannot be faulted for failing to cross-examine an unimpeachable prosecution witness.

Affirmed.

1. CRIMINAL LAW — EVIDENCE — CONFESSIONS — CORPUS DELICTI.
   Evidence of a defendant's confession is inadmissible in the absence of independent proof of the corpus delicti of the offense.

2. HOMICIDE — CORPUS DELICTI.
   The corpus delicti of homicide is established when the prosecutor establishes by a preponderance of direct or circumstantial evidence that the victim is dead and that death was the result of some criminal agency.

3. CRIMINAL LAW — PRELIMINARY EXAMINATION — BINDOVER.
   An examining magistrate has a duty to bind a defendant over for trial if evidence is presented at the preliminary examination that a crime has been committed and there is probable cause to believe that the defendant committed the crime (MCL 766.13; MSA 28.931).

4. CRIMINAL LAW — APPEAL — ASSISTANCE OF COUNSEL.
   Appellate review of a claim of ineffective assistance of counsel is generally precluded in the absence of a motion to remand so that a record can be created for the Court of Appeals to review; however, the absence of such a motion is not fatal to appellate review where the Court of Appeals can determine from the record whether counsel was deficient.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William A. Forsyth,* Prosecuting Attorney, and *Timothy K. McMorrow,* Chief Appellate Attorney, for the people.

State Appellate Defender (by *Derrick A. Carter*), for defendant on appeal.

Before: MAHER, P.J., and MURPHY and R. B. BURNS,* JJ.

R. B. BURNS, J. Defendant was convicted by a jury of felony murder, MCL 750.316; MSA 28.548. He appeals and we affirm.

The victim, Christine Marie Honson, also known as Barbara Jean Honson, Christine Harrington and Barbara Jean Compo, was married to George Honson and lived in Petoskey in 1974. Christine had a good relationship with her children, but she had a drinking problem and occasionally fought with her husband. She would sometimes leave the home for a few days at a time. In the fall of 1974, George told her that if she wanted to drink, the next time she left she should keep on going. One evening, a few weeks later, George discovered that Christine was gone. George found some suitcases in the backyard and he assumed that his wife had gone out to the highway and hitchhiked a ride. About a week later he drove to Christine's relative's house in Grand Rapids and left the suitcases there. Once back in Petoskey, he filed a missing-person report with the sheriff's department. About a year later, he divorced Christine. He has never heard from her since she disappeared.

Three of Christine's children, George, Terrilyn and Raymond, testified that they never again saw their mother or heard from her after she left the house in September, 1974.

Christine's sisters, Florence InDelicato and Eleanore Barber, testified that there was a close family relationship and visits between the sisters' fami-

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

lies. In the summer of 1974, Christine visited them in Grand Rapids. Sometime after the children were in school, in the fall of 1974, Christine called Florence and Eleanore and said that she was coming for a visit. Neither of them ever saw or heard from Christine again.

Christine's sister-in-law, Carol Harrington, last saw Christine in August, 1974, when Christine was visiting the family in Grand Rapids. Christine called in the middle of September of that year. Christine never contacted her after that.

The prosecutor presented witnesses who testified that there had been no activity on Christine's earning record with the Social Security Administration since the summer of 1974 and that no driver's license had been issued since July, 1973, in any of the names used by Christine. Also, Christine had not been involved in any criminal activity according to the Law Enforcement Information Network.

The prosecutor's chief witness, Paul Howell, testified that in the fall of 1974 he was a friend of the defendant. Christine had dated Howell's brother and had come to Howell's house at the end of September, 1974, looking for him. Howell and defendant were drinking and all three of them left the apartment together in defendant's yellow van. They drove north of Grand Rapids and parked in a field. Defendant went into the back of the van with Christine and Howell believed defendant and Christine had sex. After about five minutes Howell heard defendant tell Christine to roll over because defendant wanted to "stick it up her butt." When Christine said "No," defendant began hitting her. Christine started crying and groaning and defendant continued to slap her for ten to fifteen minutes.

Once defendant was back in the front of the van,

Howell asked to be taken home. Defendant dropped Howell off at his girlfriend's house and told Howell, if anyone ever asked him about it, to say that Christine had offered sex for money. The next day Howell asked defendant what happened to Christine. Defendant replied that he took care of it and that is all Howell needed to know.

Robin Hiler, defendant's ex-girlfriend and the mother of his child, testified that in April, 1975, defendant told her that he had beaten and killed a girl in a van because the girl would not do what defendant wanted her to do as far as sex or oral sex was concerned. Defendant claimed to have buried the girl near South Bend, Indiana, with the help of someone. Another friend of defendant, Leonard Laymon, testified that defendant had once told him that Howell could be trusted because he saw defendant beat up a girl in a van and kill her and never told anyone. Defendant told Laymon he had buried the girl near South Bend.

The trial court instructed the jury on first-degree murder, second-degree murder, voluntary manslaughter and involuntary manslaughter. The jury returned a guilty verdict on first-degree felony murder.

On appeal, defendant claims there was insufficient independent evidence of the corpus delicti of felony murder to allow introduction of evidence of defendant's admissions.

Defendant argues that the prosecutor failed to prove the corpus delicti independently of defendant's statements to prosecution witnesses. He raised this issue both in his motion to quash the bindover filed August 6, 1985, and again at trial. The trial court denied defendant's motions.

The prosecutor must present evidence of the corpus delicti independently of defendant's confessions. *People v Allen,* 390 Mich 383; 212 NW2d 21

(1973). The corpus delicti of first-degree murder consists of two elements: the death of a victim and some criminal agency as the cause. *People v Williams,* 422 Mich 381, 392; 373 NW2d 567 (1985). The corpus delicti need not be proven beyond a reasonable doubt. *People v Irby,* 129 Mich App 306; 342 NW2d 303 (1983), lv den 418 Mich 951 (1984). It may be established by a preponderance of direct or circumstantial evidence and reasonable inferences. *People v Modelski,* 164 Mich App 337, 341; 416 NW2d 708 (1987).

In *Williams,* the Court stated:

> It is an inaccurate and unwarranted reading of the history and purpose of the corpus delicti rule that suggests the need for independent proof of each and every element of the particular grade and kind of common-law or statutory criminal homicide charged as a condition of admissibility of a defendant's confession. Such an understanding of the corpus delicti rule loses sight of the historic reason for the rule; to avoid conviction for a homicide that did not occur. The logic of the rule is not served by extending it to require proof *aliunde* the defendant's confession, not only that a particular deceased lost his life and that the loss is a result of criminal agency but, in addition, proof of the aggravating circumstances which move the seriousness of the crime up the scale of criminal accountability (measured by the severity of the penalty) from manslaughter to second-degree murder or to first-degree murder. Whatever the aggravating circumstances which constitute a crime, second-degree murder instead of manslaughter, or first-degree murder instead of second-degree murder, the danger that a defendant would confess to a criminal killing which never occurred is adequately obviated when it is shown, other than by the accused's confession, that the deceased victim died as a result of a criminal agency. [422 Mich 391.]

The prosecution presented the testimony of numerous members of Christine's family who had not seen her or heard from her since the fall of 1974. Neither was there any activity in regard to her social security number or driver's license. There was eyewitness testimony that defendant had beaten Christine and that she was last seen alive with him. Once the corpus delicti was shown, the prosecution was free to bring in defendant's statements.

Next, defendant claims the trial court erred in ruling that the corpus delicti rule applied only to confessions and not admissions.

Having concluded above that the corpus delicti rule was not violated, it is not necessary for this Court to decide whether defendant's statements were confessions and, therefore, subject to the rule or merely statements which, although inculpatory, are admissible under the corpus delicti rule.

Defendant also claims the underlying felony of sodomy does not support a felony murder conviction. Defendant's argument is that in 1974, when the murder occurred, the first-degree murder statute listed rape as an underlying felony and did not include sodomy. Accordingly, when the prosecutor failed to prove that the murder occurred during a rape or attempted rape, the magistrate abused his discretion in binding over defendant for trial on the felony murder charge.

The rape statute in effect in 1974 read:

> Any person who shall ravish and carnally know any female of the age of 16 years, or more, by force and against her will, or who shall unlawfully and carnally know and abuse any female under the full age of 16 years, shall be guilty of a felony, punishable by imprisonment in the state prison for life or for any term of years, or if such person was at the time of the said offense a sexually delin-

quent person, may be punishable by imprisonment in the state prison for an indeterminate term, the minimum of which shall be 1 day and the maximum of which shall be life. Such carnal knowledge shall be deemed completed upon proof of any sexual penetration however slight. [MCL 750.520; MSA 28.788.]

At the preliminary examination Paul Howell testified that defendant wanted Christine to perform a sexual act and that she refused to do so. Defendant started slapping her around. Robin Hiler testified that defendant had told her he had killed a girl because she would not perform a sexual act with him.

The magistrate has a duty to bind a defendant over for trial if evidence is presented at the preliminary examination that a crime has been committed and there is probable cause to believe that the defendant committed it. MCL 766.13; MSA 28.931.

At trial, Howell testified that, although he did not see it, he thought that defendant and Christine were having sex for about five minutes before defendant told Christine to roll over. Howell thought that defendant wanted to sodomize Christine. Hiler testified that Christine would not have sex or oral sex with defendant. If the jury believed Hiler's testimony, which apparently it did, the testimony supports either rape or attempted rape under the rape statute quoted above. See *People v Carson,* 87 Mich App 163, 166-167; 274 NW2d 3 (1978).

Defendant next claims that venue was not properly laid in Kent County.

Midway through the preliminary examination, the district court adjourned the proceedings so that it could be determined whether venue was

properly laid. The prosecutor petitioned the attorney general for an order designating Kent County as the place of venue. The order was forthcoming and the preliminary examination continued on July 10, 1985.

MCL 762.3(2); MSA 28.846(2) provides:

> If it appears to the attorney general that a felony has been committed within the state and that it is impossible to determine within which county it occurred, the offense may be alleged in the indictment to have been committed and may be prosecuted and punished in such county as the attorney general designates. The state shall bear all expenses of such prosecution. The responsibility and the authority with reference to all steps in the prosecution of such case shall be the same, as between the prosecuting attorney of the county so designated and the attorney general, as though it were an established fact that the alleged criminal acts, if committed at all, were committed within that county.

In the present case Christine was last seen alive north of Grand Rapids. At that time, defendant was hitting Christine and she was crying and moaning. This is enough to establish venue without the attorney general's order. Under the above-quoted statute, the attorney general designated Kent County a proper venue. No error occurred in this case.

Defendant claims he was denied a fair trial because of pretrial publicity.

Defendant argues that pretrial publicity prevented him from receiving a fair trial in Kent County. Defendant presented the trial court with several newspaper clippings apparently containing reference to defendant or this case.

Two jurors who stated that they had heard of

the case remained on the jury without challenge by defendant. Defendant indicated his satisfaction with the jury before it was sworn. He cannot now complain in this Court.

Defendant also claims he was denied a fair trial by the admission into evidence of a prior robbery conviction and other uncharged crimes.

Defendant claims that the trial court abused its discretion by admitting evidence of an unarmed robbery conviction from Nevada to be used for impeachment purposes. He also argues that the prosecution witnesses' references to other uncharged crimes prejudiced him. Those specific references were made by Officer Osorio concerning impounding the van in Arizona, witness Agner's statement that he never saw the van again because it was impounded on a drug charge, Hiler's statement that defendant had assaulted her, and witness Laymon's statement that he and defendant were involved in some criminal activity.

The trial court refused to allow a CSC conviction to be used for impeachment purposes, but ruled that the unarmed robbery conviction, being a theft offense, would be admissible. Because it was unlike the present charge, it was not unduly prejudicial to defendant. This was proper under MRE 609. *People v Allen,* 429 Mich 558, 601-602; 420 NW2d 499 (1988).

These inadvertent and unsolicited references, which were properly instructed on by the trial court, did not prejudice defendant to the extent that he did not receive a fair trial. *People v Flaherty,* 165 Mich App 113, 120-123; 418 NW2d 695 (1987). This is especially true in light of defendant's own statements to the jury that he had once killed a man, that he had adulterous relationships and that he had assaulted Laymon and his friends. Defendant was not denied a fair trial because of

the unobjected-to and unsolicited remarks made by prosecution witnesses.

Defendant's last claim of error is that he was denied effective assistance of counsel when defense counsel failed to attack the credibility of the prosecutor's witnesses.

Defendant argues that his trial counsel was ineffective because he failed to cross-examine Paul Howell and failed to attack the prosecutor's witnesses' credibility during closing argument. Defendant relies exclusively upon the federal constitutional guarantee of effective assistance of counsel found in the Sixth Amendment to the United States Constitution and cites *Strickland v Washington,* 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Defendant has the burden of proving his claim of ineffective assistance of counsel. Normally, appellate review is precluded absent a motion to remand so that a record can be created for this Court to review. *People v Ginther,* 390 Mich 436, 445; 212 NW2d 922 (1973).

Defendant did not move for an evidentiary hearing. Therefore, this issue has not been preserved for appeal. Nonetheless, the absence of a motion for an evidentiary hearing is not fatal to appellate review where this Court is able to determine from the record whether counsel was deficient. *People v Kenneth Johnson,* 144 Mich App 125, 129; 373 NW2d 263 (1985).

Our review of the record in this case shows no deficiency relative to counsel's performance. Specifically, counsel's strategy of not cross-examining Paul Howell was reasonable. Howell had no prior convictions and had not made any deals with the prosecutor in exchange for his testimony. There simply was no reason to cross-examine Howell

when he was unimpeachable. Moreover, counsel indicated on the record that he had consciously thought out his strategy relative to cross-examination of Howell. Therefore, defendant has not shown ineffective assistance of counsel and this Court need not reverse on this basis. *People v Carr,* 141 Mich App 442, 452; 367 NW2d 407 (1985).

Affirmed.