PEOPLE v McMAHAN

Docket No. 98505. Argued November 8, 1995 (Calendar No. 9). Decided
    May 21, 1996. Rehearing denied 452 Mich 1201.

James McMahan was convicted by a jury in the Detroit Recorder's
    Court, Clarice Jobes, J., of second-degree murder on the basis of
    his confession. The Court of Appeals, CAVANAGH, P.J., and NEFF and
    JANSEN, JJ., reversed in an unpublished opinion per curiam, stating
    that, while the evidence presented established the death of the
    decedent, no criminal agency was shown independent of the
    defendant's confession (Docket No. 144657). The people appeal.

In an opinion by Justice MALLETT, joined by Chief Justice
    BRICKLEY, and Justices LEVIN and CAVANAGH, the Supreme Court held:

The evidence presented by the prosecution did not establish a
death by criminal agency. Without such a showing, the corpus
delicti of murder was not established. The defendant's confession
was improperly admitted.

1. Proof of the corpus delicti of a crime is required before the
prosecution may introduce inculpatory statements of an accused.
The underlying purposes of the corpus delicti requirement in a
murder case are to preclude conviction of a criminal homicide
when none was committed and to minimize the weight of a confes-
sion and require collateral evidence to support a conviction. The
corpus delicti of murder requires proof both of a death and of
some criminal agency that caused that death. Proof must consist of
evidence independent of an accused's confession. Once the corpus
delicti of the crime is established, appropriate extrajudicial confes-
sions of the accused are admissible.

2. Criminal agency is an essential component of the corpus
delicti requirement, especially where, as in this case, the victim's
body is not found. Additionally no motive was presented, and no
weapon was recovered. The prosecution failed to present evidence,
apart from the defendant's confession, that the victim's disappear-
ance and presumed demise were the result of some criminal
agency. Thus, death by criminal agency was not established, and
the defendant's confessions were improperly admitted.

Affirmed.

Justice Boyle, joined by Justices Riley and Weaver, dissenting, stated that the corpus delicti rule should be abolished and a rule adopted permitting admission of a confession to prove all elements of an offense if there is substantial independent evidence tending to establish the trustworthiness of the statement, including the statement itself.

The corpus delicti rule, requiring evidence independent of a confession as a predicate to admissibility, should be abandoned. Its utility has been met and surpassed by protections afforded under the constitutionalization of criminal procedure and other statutory guarantees. With respect to persons suffering from mental aberration, current jurisprudence provides more protections than the common-law rule. Because the common-law rule serves no contemporary purpose and inhibits conviction of the admittedly guilty, the rule articulated by the United States Supreme Court in *Opper v United States*, 348 US 84 (1954), providing that a confession is admissible when the government introduces substantial independent evidence that would tend to establish its trustworthiness should be adopted.

The trustworthiness requirement more directly protects the confessing defendant because it insures that the particular admission is sufficiently reliable to be heard by the factfinder. It provides protection where no crime has been committed and is superior to the corpus delicti rule because it also protects a defendant who confesses falsely to an actual crime that someone else has committed. No state statute or privilege compels the corpus delicti rule, and its approach is incompatible with MRE 104(a), which confines questions of admissibility to the trial court. The trustworthiness rule, by contrast, preserves a judicial check on the reliability of recanted confessions and reposes trust in the factfinder to evaluate a confession in the same manner it resolves all other evidentiary questions.

Whether viewed in the light of the common-law rule or the trustworthiness test, the defendant's voluntary statement, given after full advice of constitutional rights, was admissible to establish that he killed the victim. As applied in this case, the common-law corpus delicti rule operates to shield a recanting defendant, cunning enough to destroy a body or conceal its identity, despite a voluntary and reliable confession to the crime.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, and *Timothy A. Baughman*, Chief, Research, Training and Appeals, for the people.

*Jack J. Kraizman* for the defendant.

MALLETT, J. Defendant was convicted by a jury of second-degree murder under MCL 750.317; MSA 28.549. The Court of Appeals reversed defendant's conviction on the ground that the criminal-agency component of the corpus delicti of the crime was not established independent of defendant's confession. Unpublished opinion per curiam, entered December 14, 1993 (Docket No. 144657). We agree and affirm.

I

On August 13, 1985, Carolyn Kenyon left her apartment and was never seen or heard from again. She left in bare feet, wearing a sleeveless shirt and shorts, and did not take her purse, her medication,[1] or any identification with her. She left in defendant's company, saying she was going to his house and would be back by midnight.

An extensive search for her ensued, but was unsuccessful. At trial, the rather exhaustive efforts to find any trace of her were related by over forty-four witnesses.[2] Testimony revealed that there is no reasonable explanation for her disappearance, that she had not been seen since August 13, 1985, and that she had not been in contact with any of the governmental

---

[1] She was taking medication for thyroid and mild epileptic conditions.

[2] Carolyn Kenyon's daughters testified that their mother had a relationship with defendant, but was also seeing other men. The daughters also testified that on and until the day of their mother's disappearance, they were not aware of any difficulties between their mother and the defendant. Furthermore, there was no testimony to indicate the existence of any previous altercations between Carolyn Kenyon and the defendant.

agencies[3] with which she had frequent contact in the past. She was not discovered in any hospital or morgue. Nor did any other physician contact her physician for her records.

On March 19, 1990, almost five years after Carolyn Kenyon's disappearance, defendant was investigated in connection with the murder of a ten-year-old girl. In connection with this investigation, defendant gave three separate statements to Detroit police officers in which he confessed not only to killing the child, but also Carolyn Kenyon, and his wife, Cheryl Burwell.[4] In statements with respect to Carolyn Kenyon's disappearance, defendant indicated that he and Carolyn Kenyon were at his house drinking and smoking marijuana.[5] Defendant stated that Ms. Kenyon said something that angered him, and that he suddenly stabbed her in the chest.[6] According to the defendant, he buried Carolyn Kenyon's body in the basement of the house for a couple of days. Subsequently, he reburied

---

[3] Her means of support were Medicaid, food stamps, and Aid For Dependent Children. Furthermore, she has not renewed her driver's license since her disappearance.

[4] Burwell's body also was never found. Defendant apparently committed that murder in late June 1986. He pleaded guilty of second-degree murder in his wife's death. That conviction was affirmed by the Court of Appeals on October 2, 1992 (Docket No. 144658). The defendant does not raise that matter here. He is presently serving a 50- to 100-year term for the murder of Cheryl Burwell. He was also convicted of first-degree murder in the death of the ten year old. His appeal from this first-degree murder conviction was affirmed by the Court of Appeals on September 12, 1994. An application for leave to appeal was not filed with this Court. Docket No. 135826.

[5] It is unclear from the record if both Carolyn Kenyon and the defendant were under the influence of drugs and alcohol. Carolyn Kenyon's daughters did, however, testify that their mother had a drinking problem.

[6] Although defendant's three confessions are consistent on the issue how he killed and disposed of Carolyn Kenyon, his reason for killing her remains unclear.

the body at another nearby location before he finally placed it in trash bags and then in a city dumpster. Police investigations conducted in an attempt to substantiate the defendant's story were unsuccessful. See part III.

The trial judge admitted into evidence defendant's extrajudicial confessions made to the police officers. The jury returned a verdict of guilty of second-degree murder. The Court of Appeals reversed, stating, "While we believe that the evidence presented establishes the death of Carolyn Kenyon, the evidence is almost nonexistent to show some criminal agency as the cause of death independently of defendant's confession." Slip op at 3. We agree.

II

We are asked by the prosecution to reverse the decision of the Court of Appeals and to find that the defendant's extrajudicial confessions were properly admitted. To achieve such a result, the prosecution requests this Court to examine the continued viability of the common-law corpus delicti requirement in light of its federal counterpart, the trustworthiness doctrine. We decline the invitation to replace our common-law corpus delicti standard with the trustworthiness doctrine adopted by the federal judiciary.[7]

---

[7] The United States Supreme Court summarized the federal trustworthiness doctrine in the following manner:

> [T]he corroborative evidence need not be sufficient, independent of the statements, to establish the corpus delicti. It is necessary, therefore, to require the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement. Thus, the independent evidence serves a dual function. It tends to make the admission reliable, thus corroborating it while also establishing independently the other neces-

Rather, we reaffirm in this opinion that the common-law corpus delicti requirement remains the rule of law in this state.[8]

In Michigan, it has long been the rule that proof of the corpus delicti is required before the prosecution is allowed to introduce the inculpatory statements of an accused. *People v Williams*, 422 Mich 381, 388; 373 NW2d 567 (1985); *People v Allen*, 390 Mich 383; 212 NW2d 21 (1973). The underlying purposes of the corpus delicti requirement are (1) "to guard against, indeed to preclude, conviction for a criminal homi-

---

sary elements of the offense. [Citation omitted.] It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth. [*Opper v United States*, 348 US 84, 93; 75 S Ct 158; 99 L Ed 101 (1954).]

Under the federal standard, the prosecution would not need to independently establish death by criminal cause, but rather would only need to establish evidence that indicates that the defendant's confessions were trustworthy under the circumstances.

We do not believe that this result comports with the underlying purpose of the corpus delicti doctrine. The underlying purposes of the corpus delicti requirement are (1) "to guard against, indeed to preclude, conviction for a criminal homicide when none was committed," *People v Williams*, 422 Mich 381, 388; 373 NW2d 567 (1985) and (2) "to minimize the weight of a confession and require collateral evidence to support a conviction." Hall, General Principles of Criminal Law (2d ed), ch VII, p 226. "There can be no criminal without a crime in fact committed." *People v Kirby*, 223 Mich 440, 452; 194 NW 142 (1923) (Wiest, C.J., concurring).

This Court remains unconvinced that the protection afforded an accused by the common-law corpus delicti standard is no longer needed. The constitutional protections cited by the dissent are not foolproof. We favor the common-law approach, because we continue to believe that an accused deserves the benefit of independent proof of the crime, particularly in those situations in which no body is recovered. Furthermore, the prosecution has not persuaded this Court that the common-law corpus delicti doctrine should be changed. Consequently, this Court chooses not to modify the corpus delicti of murder in the manner articulated in *Opper v United States, supra.*

[8] Additionally, we find appellant's alternative theory that under MRE 104(a), the defendant's confessions can be used in establishing its own admissibility also to be without merit.

cide when none was committed," *Williams* at 388, and (2) "to minimize the weight of a confession and require collateral evidence to support a conviction." Hall, General Principles of Criminal Law (2d ed), ch VII, p 226.

In Michigan, the corpus delicti of murder requires proof both of a death and of some criminal agency that caused that death. *Williams, supra.* We emphasize that such proof must consist of evidence that is independent of the accused's confessions. *People v Konrad,* 449 Mich 263, 269-270; 536 NW2d 517 (1995) ("the rule provides that a defendant's confession may not be admitted unless there is direct or circumstantial evidence independent of the confession establishing [1] the occurrence of the specific injury [for example, death in cases of homicide] and [2] some criminal agency as the source of the injury").[9] Once the corpus delicti of the crime is established, appropriate extrajudicial confessions of the accused are admissible.[10]

III

We continue to believe that criminal agency is an essential component of the corpus delicti require-

---

[9] Michigan's adherence to the common-law corpus delicti is not an aberration. Despite the federal judiciary's decision to abandon the common-law corpus delicti standard in favor of the trustworthiness doctrine, *Opper, supra,* many other states continue to abide by the common-law corpus delicti doctrine. According to 1 McCormick, Evidence (4th ed), § 145, p 557, most jurisdictions still require that the evidence contain independent proof of the corpus delicti. See also 7 Wigmore, Evidence (Chadbourn rev), § 2071, p 511, n 3.

[10] The corpus delicti requirement is merely a preliminary procedural requirement. An extrajudicial confession must also meet other evidentiary tests before it is admissible, i.e., it must be voluntary.

ment.[11] Absent some showing of criminal agency, there are any number of possible explanations for an individual's disappearance, including death by accidental means. *People v Kirby*, 223 Mich 440; 194 NW 142 (1923). In particular, this Court has underscored the importance of the criminal-agency requirement in cases where, as here, the victim's body is not found.

> The confession of a defendant charged with homicide cannot be taken as evidence of the fact of the death of a human being by criminal means. In cases of homicide the corpus delicti may or may not be established by evidence disclosed by a dead body. If a body discloses death occasioned by criminal means then the corpus delicti is made out. If a dead body does not furnish such proof then death by criminal means must be shown to establish the corpus delicti. *If the body, or remains thereof, cannot be produced, death by criminal means must be shown in order to establish the corpus delicti.* [*Id.* at 451 (WIEST, C.J., concurring) (emphasis added).]

The facts in the case sub judice are analogous to the situation presented to the Court in *Kirby*. In *Kirby*, this Court found that the disappearance of an infant, by itself, was insufficient to establish the corpus delicti of murder. *Id.* at 449. Aside from the extrajudicial statements of the grandmother that the infant died because of "her neglect," there was no evidence of criminal agency.[12] Absent independent evidence to support a finding of death by criminal

---

[11] We reject the prosecution's suggestion that death alone should satisfy the corpus delicti requirement.

[12] *Kirby* at 442. Justice WIEST noted: "In the instant case no witness testified that the babe was dead. No one found its remains, though the back yard was dug up, cemeteries were searched, and the furnace was examined." *Id.* at 449.

means, this Court held that the corpus delicti of murder was not established. *Id.*

In the instant case, there was no motive presented at trial, aside from the defendant's confessions. No murder weapon was recovered. Furthermore, the body was not recovered; therefore, no autopsy could be performed.[13] We realize that part of the evidence-collection problem was because defendant's confessions were given to police almost five years after the alleged killing. Nevertheless, the prosecution failed to present evidence, apart from defendant's confession, that Carolyn Kenyon's disappearance and presumed demise were the result of some criminal agency. As noted by the Court of Appeals:

> [T]here is no evidence of her death being caused by a criminal agency. The knife defendant allegedly used to stab her was never recovered, although at least three witnesses testified that defendant carried knives in a pouch on his belt. No human bloodstains were ever found in defendant's house and there were no other articles found with bloodstains on them. The human scents found by the dog in the crawl space and outside the house near the alley do not conclusively prove whose scents the dog was tracking and we note that this occurred approximately 4½ years after Carolyn's disappearance. A police officer did find an area in the basement where it appeared that a hole had been dug and filled back in, but there was no way to determine when this occurred. Further, there was no evidence that defendant ever hit or acted violently toward Carolyn during their relationship. No evidence of a possible motive was ever established at trial. There was no witness to any part of the killing or disposal of the body. [Slip op at 3.]

---

[13] Although we accept that production of the deceased's body is not required to prove the corpus delicti, in many cases an analysis of the body of the deceased will reveal death by a criminal agency.

Consequently, we agree that death by criminal agency was not established.

The Court of Appeals rejected the prosecution's claim that *People v Brasic*, 171 Mich App 222; 429 NW2d 860 (1988), and *People v Modelski*, 164 Mich App 337; 416 NW2d 708 (1987), support the conclusion that criminal agency was established in the case sub judice.

> In *Brasic* and *Modelski*, this Court found that the corpus delicti of the homicides had been established and that the confessions were therefore properly admitted. In *Brasic*, however, there was evidence that a witness saw the victim and the defendant enter a van where the witness believed they had sex. The witness also heard the defendant say that he wanted to perform anal sex on the victim to which she responded that she would not. The defendant then proceeded to hit the victim for ten to fifteen minutes. The victim was last seen with the defendant. Thus in *Brasic*, there was evidence that the defendant had acted violently toward the victim just prior to her disappearance.
>
> In *Modelski*, there was evidence that the marriage between the defendant and his wife (who disappeared) was deteriorating and that the defendant accused his wife of infidelity. There was evidence that the defendant and his wife argued and fought a great deal. After her disappearance, the defendant directed a co-worker to listen to a song entitled "Kill my Wife" and the defendant gave away his wife's personal effects after her disappearance. Thus in *Modelski*, there was also evidence of arguments and violence between the defendant and the victim and the defendant's actions after her disappearance helped to establish the corpus delicti of the offense. [Slip op at 3.]

We agree with the Court of Appeals that evidence of criminal agency equivalent to that in *Brasic* and *Modelski* is not present in the instant case. Although the trial testimony indicates that Carolyn Kenyon was

last seen alive with defendant, there was no testimony of any problems or altercations between the defendant and Carolyn Kenyon either on the night she disappeared or anytime previously in their relationship.

IV

Thus, under the current formulation of the corpus delicti rule, the Court of Appeals properly decided this case. We reiterate that the corpus delicti of murder requires a showing of death by criminal means. We agree with the Court of Appeals that the evidence presented at trial indicates that Carolyn Kenyon is deceased, even though her body has not been recovered. Furthermore, we agree that without defendant's confession, there is insufficient evidence that her death was the result of a criminal agency. Carolyn Kenyon's disappearance and presumed demise, alone, are not sufficient evidence of a death caused by criminal agency.

V

The evidence presented by the prosecution did not establish a death by criminal agency. Without a showing of criminal agency, the corpus delicti of murder was not established and the defendant's confessions were improperly admitted. The Court of Appeals reversal of defendant's conviction is affirmed.

BRICKLEY, C.J., and LEVIN and CAVANAGH, JJ., concurred with MALLETT, J.

BOYLE, J. (*dissenting*). I dissent from the Court's holding.

I would abolish the common-law rule[1] and adopt
the rule that a confession is admissible to prove all
elements of an offense if there is substantial indepen-
dent evidence tending to establish the trustworthiness
of the statement, including the statement itself.

I

Almost eighty years ago, Judge Learned Hand felt
constrained to follow the common-law corpus delicti
rule while doubting that it "has in fact any substantial
necessity in justice . . . ." *Daeche v United States*,
250 F 566, 571 (CA 2, 1918). The rule was "never well
adapted to its purpose,"[2] and took root during the
nineteenth century. The original basis was a desire to
avoid conviction on recanted confessions to a nonex-
istent homicide. Three discrete policies supporting
the rule have been articulated: avoiding reliance on
repudiated confessions out of a concern for voluntari-
ness, protecting mentally unstable persons who
falsely confess, and promoting better law enforce-
ment by precluding reliance on confessions. However,
"[i]n every case, the rationale proves too much while
the corpus delicti rule delivers too little."[3]

To the extent that the reason for the rule was to
avoid reliance on unreliable confessions, or to protect
the mentally unstable, its utility has been met and
surpassed by protections afforded under the constitu-

---

[1] *People v Allen*, 390 Mich 383; 212 NW2d 21 (1973); *People v Williams*,
422 Mich 381; 373 NW2d 567 (1985). In *Williams*, the Court rejected the
claim that all essential elements of the crime were the corpus of first-
degree premeditated murder.

[2] *United States v Kerley*, 838 F2d 932, 939 (CA 7, 1988) (Posner, J.).

[3] Mullen, *Rule without reason: Requiring independent proof of the
corpus delicti as a condition of admitting an extrajudicial confession*,
27 U SF L R 385, 401 (1993).

tionalization of criminal procedure and other statutory guarantees. Due process is violated where a confession is obtained by exploitation of a defendant's probable insanity, *Blackburn v Alabama*, 361 US 199; 80 S Ct 274; 4 L Ed 2d 242 (1960), or where the totality of the circumstances renders the confession involuntary, *People v Wright*, 441 Mich 140; 490 NW2d 351 (1992). The burden is on the state to show voluntariness, and a defendant's mental limitations are taken into account in determining whether the statement was the product of the defendant's free will. *People v Belknap*, 146 Mich App 239; 379 NW2d 437 (1985).

Prompt arraignment and determination of probable cause is guaranteed by the United States Constitution and by court rule. *Riverside Co v McLaughlin*, 500 US 44; 111 S Ct 1661; 114 L Ed 2d 49 (1991).[4] Custodial questioning on less than probable cause violates the Fourth Amendment, *Dunaway v New York*, 442 US 200; 99 S Ct 2248; 60 L Ed 2d 824 (1979). The warnings mandated by *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), to dissipate the inherent pressures of custodial interrogation, assure all defendants the right to remain silent and the presence of counsel during interrogation. *Edwards v Arizona*, 451 US 477; 101 S Ct 1880; 68 L Ed 2d 378 (1981), establishes a bright-line rule protecting against any subsequent police-initiated interrogation following exercise of Fifth Amendment rights, or Sixth Amendment rights regarding specific offenses. *Michigan v Jackson*, 475 US 625; 106 S Ct 1404; 89 L Ed 2d 631 (1986). Every defendant has a

---

[4] *McLaughlin* instructed that a delay exceeding forty-eight hours presumptively violates the Fourth Amendment. *Powell v Nevada*, 511 US 79, __; 114 S Ct 1280, 1283; 128 L Ed 2d 1 (1994).

statutory right to the determination of mental competency, MCL 768.20a; MSA 28.1043(1), and *Miranda* warnings are required. *People v Wright*, 431 Mich 282; 430 NW2d 133 (1988). A writ of habeas corpus to inquire into the cause of detention, and an order to show cause why a writ should not issue, may be brought on behalf of a person imprisoned "under any pretense whatsoever." MCL 600.4307; MSA 27A.4307.

Thus, as decades of precedent clearly establish, any "suggestion that the corpus delicti rule meaningfully buttresses the right against coerced self-incrimination is anachronistic at best." Mullen, *Rule without reason: Requiring independent proof of the corpus delicti as a condition of admitting an extrajudicial confession*, 27 U SF L R 385, 405 (1993). As the author of this commentary correctly notes:

> The hollowness of the voluntariness rationale is best shown by the rigid applicability of the corpus delicti rule regardless of whether the voluntariness of a confession is in doubt. The rule bars concededly voluntary confessions where there is no independent proof of crime, but does not block the admission of dubious confessions if the prosecution meets a low threshold of evidence supporting the occurrence of the crime.

To the extent that courts have described the reason for the common-law rule as protecting against the conviction of a person suffering from mental aberration,[5] our current jurisprudence provides more protections for an unstable person than does the common-law rule. Although the state may not exploit

---

[5] *Commonwealth v Forde*, 392 Mass 453, 457-458; 466 NE2d 510 (1984); *State v Yoshida*, 44 Hawaii 352, 356-358; 354 P2d 986 (1960); *State v Weldon*, 6 Utah 2d 372, 375-376; 314 P2d 353 (1957).

mental instability and procure a confession that passes constitutional muster, the common-law corpus delicti rule provides no protection to a person of limited intelligence or an unstable person pleading guilty to a crime someone else has committed.[6] Contemporary jurisprudence has likewise undermined the law-enforcement rationale. Where a confession is obtained in full compliance with constitutional requirements of prompt arraignment, advice of rights, presence of counsel upon exercise of rights, and the state's demonstration of a free and voluntary waiver, *Johnson v Zerbst*, 304 US 458; 58 S Ct 1019; 82 L Ed 1461 (1938), it does not promote good law enforcement to disallow use of the confession in evidence.

Finally, to the extent that the majority and the common-law rule rest on the fear that juries will accord undue weight to confessions, the rule likewise promises too much, while it delivers too little. Not only do current constitutional protections elevate the reliability of confessions, the constitution is now construed to guarantee that a conviction must be established by proof beyond a reasonable doubt. *Jackson v Virginia*, 443 US 307; 99 S Ct 2781; 61 L Ed 2d 560 (1979). The constitution, decisional law, and statutes dictate that a confession is admissible only if made within a reasonable time after arraignment, after full advice and waiver of rights, under circumstances indicating it was not otherwise coerced or involuntary,

---

[6] Mullen, *Rule without reason, supra* at 398, points out that if the purpose is to provide protection to those of limited mental capability, the rule should logically require independent evidence of the identity of the defendant as the person who committed the crime, which would require proof of the entire crime, a definition characterized by Wigmore as "absurd." See Perkins, *The corpus delicti of murder*, 48 Va L R 173, 181 (1962).

and that a conviction will be upheld only if there is corroboration of all elements of the offense beyond a reasonable doubt.

In summary, if evidence is offered that corroborates some aspect of a voluntary confession and proves its truthfulness, the rationales variously advanced to explain the corpus delicti rule have been served. The majority's reason for retention of the rule that benefits this defendant, as opposed to other confessing defendants, is that the defendant "deserves the benefit of independent proof of the crime . . . ." *Ante* at 548, n 7. However, no rational reason is advanced to explain why a defendant careless enough to leave a body or other corroboration will be confronted with his voluntary confession while the more cunning defendant will not. Bereft of legal or logical foundation, the only justification for the common-law rule is to preclude conviction.[7] That is a justification this Court should not endorse. *People v Williams*, 422 Mich 381, 392; 373 NW2d 567 (1985).

II

Given that the common-law rule serves no contemporary purpose and inhibits conviction of the admittedly guilty, this Court should embrace the rule adopted more than forty years ago by the United States Supreme Court. In *Opper v United States*, 348 US 84, 93; 75 S Ct 158; 99 L Ed 101 (1954), the Court abandoned the common-law rule requiring evidence

---

[7] As pointed out, the common-law rule is particularly onerous as a barrier to prosecution in cases involving child abuse or infanticide in which independent evidence may be "virtually unattainable." Comment, *Reevaluation of the California corpus delicti rule: A response to the invitation of proposition 8*, 78 Cal L R 1571, 1582 (1990). See *People v Kirby*, 223 Mich 440, 459; 194 NW 142 (1923) (SHARPE, J., dissenting).

independent of the confession as a predicate to admissibility and held that a confession is admissible when the government introduces "substantial' independent evidence which would tend to establish the trustworthiness of the statement."

In *Smith v United States*, 348 US 147, 156; 75 S Ct 194; 99 L Ed 192 (1954), the Court further explained, "it is sufficient if the corroboration merely fortifies the truth of the confession, without independently establishing the crime charged . . . ." However, the people must not only provide substantial independent evidence tending to establish the truthfulness of a confession or admission; the people must also corroborate all elements of the offense established by the admission:

> All elements of the offense must be established by independent evidence or corroborated admissions, but one available mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense "through" the statements of the accused. [*Id.*]

Agreeing that the protection provided by the common-law rule can be provided by careful scrutiny of the evidence by a conscientious judge, Professor McCormick states that "The Supreme Court's *Opper* approach is adequate to serve such need as exists."[8] *Opper* imposes on trial judges a duty to assure, if the prosecution's case rests on the defendant's out-of-court admission, that the prosecution has produced reasonable evidence other than that admission to establish the trustworthiness of the admission or confession.

---

[8] 1 McCormick, Evidence (4th ed), § 145, p 564.

First, the trustworthiness requirement more directly protects the confessing defendant than does the corpus delicti rule articulated in *People v Williams, supra,* or *People v Allen,* 390 Mich 383; 212 NW2d 21 (1973). The latter approach insures only that a crime has been committed, while the former insures that the particular admission is sufficiently reliable to be heard by the factfinder.

Second, as observed above, the suggestion that the corpus delicti rule meaningfully buttresses the right against coerced self-incrimination is anachronistic. *State v Van Hook,* 39 Ohio St 3d 256, 260-261; 530 NE2d 883 (1988); *Willoughby v State,* 552 NE2d 462, 466 (Ind, 1990); *State v Parker,* 315 NC 222, 235; 337 SE2d 487 (1985). Because the corroboration rule is duplicative of the fairness protections of *Escobedo*[9] and *Miranda* and the voluntariness doctrine, it cannot be supported on the ground that it will prevent excessive use of involuntary confessions. Professor McCormick concludes:

> The major advantage of the trustworthiness approach is that it provides some protection against conviction on the basis of inaccurate confessions while avoiding serious problems involved in the *corpus delicti* formulation. [1 McCormick, Evidence (4th ed), § 145, p 560.]

The rigid application of the common-law rule in the case before us demonstrates the anomalous consequence of applying a rule designed to protect against involuntary confessions, to exclude a voluntary confession whose truthfulness is corroborated.

---

[9] *Escobedo v Illinois,* 378 US 478; 84 S Ct 1758; 12 L Ed 2d 977 (1964).

While the majority defends its maintenance of this anomaly by stating that "many other states continue to abide by the common-law corpus delicti doctrine," *Ante* at 549, n 9, it has been repeatedly[10] shown that courts have created numerous exceptions to the rule to avoid the harsh consequence of freeing the admittedly guilty by rigid application of the rule. "The corpus delicti rule, however, frequently suffers distortions of such magnitude that a want of intellectual honesty must rank among the costs of maintaining it. The common need to work around the rule to achieve justice suggests that justice would be better served by abandoning the rule." Mullen, *Rule without reason*, *supra*, p 417.

Under the trustworthiness doctrine, direct proof of homicide is not required, and neither the body of the missing person nor evidence of the method used to kill the victim is required. However, the federal rule requires that the prosecution must produce evidence corroborative of the confession's reliability. Thus, although the trustworthiness doctrine is like the corpus delicti rule in that it protects the situation where no crime has been committed, it is superior to the corpus delicti rule because it also protects a defendant who confesses falsely to an actual crime that someone else has committed.[11] Where there is an

---

[10] Note, *Confession corroboration in New York: A replacement for the corpus delicti rule*, 46 Fordham L R 1205 (1978); *Developments in the law: Confessions*, 79 Harv L R 935, 945-955 (1966); comment, *California's corpus delicti rule: The case for review and clarification*, 20 UCLA L R 1055 (1973).

[11] Furthermore, it protects a defendant in the case in which a dishonest police officer, a self-interested accomplice, or a malicious enemy seeks to frame an innocent defendant by fabricating a story that the defendant confessed to committing an actual crime.

indication of unreliability, "the trial judge . . . should exercise great care in determining whether the statements of the accused were corroborated." *United States v Calderon*, 348 US 160, 164; 75 S Ct 186; 99 L Ed 202 (1954).

The corpus delicti rule does not protect the guilty-pleading defendant, presumably because a judge is charged with evaluating the reliability of the in-court confession. *State v Schomaker*, 303 NW2d 129 (Iowa, 1981). Where the confessing defendant recants and goes to trial, the trustworthiness doctrine likewise insures that the trial judge will make a preliminary determination not only that the defendant has been afforded constitutional and statutory rights, but that there is substantial independent evidence of reliability. As one commentator has observed:

> It is much less likely that a person will be erroneously convicted as the result of a contested trial where the only evidence is a repudiated confession than that he will be erroneously convicted on a plea of guilty where no evidence whatsoever is presented. [Gustafson, *Have we created a paradise for criminals?*, 30 S Cal L R 1, 9 (1956).]

Moreover, regarding crimes in which no tangible injury or loss occurs, and the crime cannot be found to be committed without reference to a specific defendant, the federal rule is superior. In that case, the corpus delicti would require evidence of all three elements of a crime including the identity of the offender, thus providing greater protection to an accused "than the rule affords to a defendant in a homicide prosecution . . . ." *Smith v United States*, *supra* at 154.

Because the corpus delicti rule produces a socially aberrant result, while adding no additional protection to the recanting defendant than that offered by the shield of contemporary jurisprudence and the trustworthiness doctrine, the rule should be abandoned. No state statute or privilege compels the rule, and the approach is incompatible with Rule 104(a) of the Michigan Rules of Evidence, which confines questions of admissibility to the trial court in furtherance of the overall goal to promote the ascertainment of truth. The trustworthiness rule preserves a judicial check on the reliability of recanted confessions and reposes trust in the factfinder to evaluate a confession in the same manner it resolves all other evidentiary questions.[12]

III

Today, the conviction of a person who every justice on this Court, along with twelve jurors, believe has killed his victim, is reversed because of the efficiency of garbage collection and disposal. Reconviction is problematic. Such results have lead some states to redefine the common-law version of corpus delicti[13] and adopt the Wigmore view[14] that the corpus delicti is the fact of the specific loss or injury sustained. Other states have ameliorated such harsh consequences by reducing the quantum of evidence neces-

---

[12] The defendant is entitled to litigate the reliability and believability of the confession following the determination that it was lawfully obtained. *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

[13] Whatever support there may be in prior cases of this Court for the view that the corpus delicti is loss plus criminal agency, the prosecution correctly points out that there is no support for the conclusion that the corpus delicti equates to all elements of the offense.

[14] 7 Wigmore, Evidence (Chadbourn rev), § 2072, pp 524-525.

sary to show criminal agency. These developments evidence that barring convictions in the name of the corpus delicti rubric is anomalous to the fair administration of justice. They demonstrate that

> the value of the corpus delicti rule exceeds the price paid to maintain it—a price exacted in the form of reversed convictions of guilty persons, prosecutions abandoned or never begun for want of independent evidence of the corpus delicti, and tortured appellate reasoning to sustain convictions obtained in violation of the rule. [Mullen, *supra*, p 386.]

Rather than create exceptions to evade the rule or perpetuate a rule that frees the guilty and draws far more support from stare decisis than from any logic or social policy, *id.* at 416, several jurisdictions[15] define the corpus as the fact of loss, rather than loss plus criminal agency, or loss, agency, and the identity of the defendant as the responsible party:

> [T]he contrast between the first and the other elements is what is emphasized by the rule; i.e., it warns us to be cautious in convicting, since it may subsequently appear that no one has sustained any loss at all; for example, a man has disappeared, but perhaps he may later appear alive. To find that he is in truth dead, yet not by criminal violence, i.e., to find the second element lacking, is not the discovery against which the rule is designed to warn and protect us. [7 Wigmore (Chadbourn rev), § 2072, p 525.]

The fact that jurisdictions retaining the loss plus criminal agency definition have manipulated the quan-

---

[15] As of 1993, four states required proof of only loss or harm, Mullen, *supra*, p 389, as outlined by the Wigmore approach to corpus delicti, see 7 Wigmore, n 14 *supra*, § 2072, p 524.

tum of proof of agency to require a bare minimum threshold is cited by commentators as further evidence that the rule is unworkable. Mullen, *supra*, p 390. Writing before the decisions in *Miranda* and *Jackson v Virginia*, *supra*, Professor Perkins described the quantum as prima facie evidence citing cases that hold that "[t]he corroborative proof 'need show only the probability that a crime has been committed.' " Perkins, *The corpus delicti of murder*, 48 Va L R 173, 181, n 42 (1962), citing *Hays v State*, 214 Miss 83, 86; 58 So 2d 61 (1952). More recently, California and panels of our own Court of Appeals have explicitly held that evidence consistent with criminal agency is sufficient to support admission of a confession. *People v Mattson*, 50 Cal 3d 826, 874; 789 P2d 983 (1990). See also *People v Wise*, 134 Mich App 82; 351 NW2d 255 (1984). While Perkins also states that proof of the unexplained disappearance of the alleged victim is never sufficient in itself to establish the corpus delicti, where a body is found, proof of the corpus delicti is sufficient if it points to an unlawful slaying, despite the fact that it is consistent with accident or suicide. Perkins, Criminal Law (3d ed), § 1, p 146, n 9. The approach is consistent with the trend of state courts to avoid the harsh consequences of the traditional rule by flexible definition of the quantum of independent proof. Mullen, *supra*, p 392, n 33:

> Depending on the jurisdiction, a crime may be proven sufficiently by "slight evidence," any or "some" evidence, evidence "tending to show" that a crime was committed, evidence that can "support an inference" that a crime occurred, "prima facie" evidence, evidence amounting to "probable cause," "substantial" evidence, or a "preponderance" of the evidence. . . . Also rarely articulated is the distinction frequently drawn between the quantum of evi-

dence required to support the first element of corpus delicti (loss or injury) and that demanded to support the second (criminal agency)." [*Id.* at 390-391, 393.]

The many exceptions and limitations courts have created to avoid the consequences of literal application of the rule supports the conclusion that the rule should be abandoned. It should be frankly admitted that the evidentiary costs of the rule are unjustified by a need to provide additional safeguards surrounding the extrajudicial words of the accused. The traditional rule is at its most mischievous when, despite the loss being shown, the factfinder is unable to hear a validly obtained and voluntary confession.[16]

IV

The decedent, who habitually returned home at night, left her ten-year-old in the care of an older sister, was last seen in defendant's company, barefoot and dressed in shorts and a T-shirt. The victim said[17] she was on her way to defendant's home and would be back by midnight. She was never seen again. Despite needing medication for a thyroid disorder and epilepsy, Ms. Kenyon did not take her medication, her purse, or any identification.

The defendant, who also confessed to two other murders, gave three full confessions. He stated that he had originally buried Ms. Kenyon in the basement of his house and then, next to the alley side of his

[16] That the majority's concern is assuaged in this case by the fact that defendant stands convicted of two other charges of murder, provides neither a future level of comfort for this Court, nor redress for the family of this victim.

[17] The Rules of Evidence do not apply to a threshold determination of admissibility. MRE 104(a).

house. A tracker dog in a search for human scent at defendant's residence led the officer inside a crawl space and an area outside toward the alley, and a witness testified about a hole in the basement that had been dug out and filled in. An exhaustive investigation found no trace of Ms. Kenyon at the morgue or hospitals, and no contact with governmental agencies; her Aid to Dependent Children and Medicaid checks went uncollected.

Analyzing the issue under the *Opper* approach,[18] there is independent evidence corroborating the recanted confession. There is no claim that the confession was other than voluntary, given freely after full advice of rights. There is no suggestion of any mental illness or other mental impairment. The defendant's statement that he left the apartment with the deceased was corroborated by her daughter, his statement that they went to his residence was corroborated by the victim's having given her daughter directions to get there, his statement that he placed her body in the dumpster was corroborated by the fact that it was never found, and his statement that he had previously buried her in the basement and in the yard is corroborated respectively by a filled-in hole and a dog's scenting at the fence area.

---

[18] Without reference to the confession, a circumstantial inference to be drawn from these facts is that it is more likely that Ms. Kenyon is dead than that she has voluntarily absented herself. There is evidence pointing to a healthy state of mind and the prosecutor introduced evidence showing that a body was not found in the places to be expected if the deceased had died accidentally or by her own hand. Although we do not analyze the case under the common-law corpus delicti rule, it would appear that the confession would be admissible because the absence of a body is consistent with unlawfulness in causing the injury in question. *People v Wise, supra.*

CONCLUSION

The reasons and the means causing Carolyn Kenyon's death are not a mystery. The defendant killed her, and, whether viewed through the prism of the common-law rule or the trustworthiness test, his voluntary statement, given after full advice of constitutional rights, was admissible to establish that fact. As this case demonstrates, the common-law corpus delicti rule operates to shield a recanting defendant cunning enough to destroy a body or conceal its identity, despite a voluntary and reliable confession to the crime. That price is too high. The rule should be abandoned, and the Court should adopt the federal trustworthiness rule. This approach continues to accord to recanted confessions a unique evidentiary status, while addressing the aberrational effect of the common-law rule.

I would reverse the decision of the Court of Appeals.

Riley and Weaver, JJ., concurred with Boyle, J.