PEOPLE v KING

Docket No. 259295. Submitted May 11, 2006, at Petoskey. Decided
    June 6, 2006, at 9:00 a.m.

   Genevieve V. King was convicted by a jury in the Benzie Circuit
   Court of being an accessory after the fact to murder and being an
   accessory after the fact to unlawfully driving away an automobile
   (UDAA). The court, James M. Batzer, J., had admitted the defen-
   dant's confession to being an accessory after the fact to those
   crimes after the prosecution had established the *corpus delicti* for
   murder and UDAA without offering evidence independent of the
   defendant's confession to establish that assistance was rendered to
   the principals who committed those crimes. The defendant ap-
   pealed.

      The Court of Appeals *held*:

      1. The trial court properly admitted the defendant's confes-
   sion. The *corpus delicti* rule requires that a preponderance of
   direct or circumstantial evidence, independent of a defendant's
   inculpatory statements, establish the occurrence of a specific
   injury and criminal agency as the source of that injury before the
   defendant's statements may be admitted as evidence. An accessory
   after the fact is one who, with knowledge of the principal's guilt,
   renders assistance to hinder the detection, arrest, trial, or punish-
   ment of the principal. The *corpus delicti* of being an accessory after
   the fact, however, is the same as the *corpus delicti* of the underly-
   ing crime itself. The *corpus delicti* requirement for a charge of
   accessory after the fact is satisfied when the specific injury at the
   hands of a criminal agency, which is that of the underlying crime
   committed by the principal, is established by evidence independent
   of the confession. Once that has been established, as it was in this
   case concerning the murder and the UDAA, a defendant's confes-
   sion may be introduced to establish that his or her degree of
   culpability is that of an accessory after the fact.

      2. Jurisdiction to try the charges of accessory after the fact
   properly lay in Benzie County. The principals committed the
   murder and the UDAA in Benzie County. Even though the
   defendant's actual assistance with the requisite knowledge of the
   principals' guilt did not begin until after the principals and the

defendant had left this state, under MCL 762.8, jurisdiction properly lies in any county in which an act constituting part of the crime occurred. In multiple-offender situations, the statute does not require that a particular defendant have committed an act in the county in which the case is tried. The commission of each underlying crime by the principals was an element of the defendant's charge of being an accessory after the fact to that crime. Therefore, a charge of being an accessory after the fact may be brought in the county in which the underlying crime occurred. Similarly, MCL 762.2(2)(a) provides for jurisdiction in Michigan when any act constituting an element of the crime is committed here.

Affirmed.

1. CRIMINAL LAW — *CORPUS DELICTI* RULE — ACCESSORIES AFTER THE FACT.

The *corpus delicti* rule requires that a preponderance of direct or circumstantial evidence, independent of a defendant's inculpatory statements, establish the occurrence of a specific injury and criminal agency as the source of that injury before the defendant's statement may be admitted as evidence; the *corpus delicti* of being an accessory after the fact to a crime is the same as the *corpus delicti* of the underlying crime itself, and it is not necessary under the rule to establish independently of the defendant's statements that assistance was rendered to the principal who committed the crime; once the *corpus delicti* of the underlying crime is established by evidence independent of the defendant's confession, that confession may be introduced to establish that the defendant's degree of culpability is that of an accessory after the fact.

2. CRIMINAL LAW — JURISDICTION — ACCESSORIES AFTER THE FACT.

Jurisdiction to try a charge of being an accessory after the fact to a crime properly lies in any county in which an act constituting a part of the crime occurred, including the commission of the underlying crime by the principal, regardless of whether the accessory after the fact rendered all of his or her assistance with knowledge of the principal's guilt outside that county or outside this state (MCL 762.2[2][a], 762.8).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Anthony J. Cicchelli*, Prosecuting Attorney, and *Brian Neill*, Assistant Attorney General, for the people.

*Law Office of Patrick Dougherty, PLC* (by *Patrick A. Dougherty*), for the defendant.

Before: SAWYER, P.J., and KELLY and DAVIS, JJ.

SAWYER, P.J. We are asked in this case to determine what constitutes the *corpus delicti* for a charge of accessory after the fact. In light of the purpose of the rule, we determine that the *corpus delicti* of accessory after the fact is the same as the *corpus delicti* of the underlying crime itself. In this case, because the prosecutor had established the *corpus delicti* for both murder and unlawfully driving away an automobile, the trial court properly admitted defendant's confession to being an accessory after the fact to murder and an accessory after the fact to unlawfully driving away an automobile. We also determine that jurisdiction to try a charge of accessory after the fact properly lies in the county in which the underlying crime occurred, even if the actual assistance was rendered outside that county.

Defendant was convicted of two counts of accessory after the fact,[1] one as an accessory to murder and the other as an accessory to unlawfully driving away an automobile (UDAA). She was sentenced to two years' probation. Her convictions arise out of the murder of Lillian Ross by Ross's grandson, John Robertson, and another individual, Robert Eckstein, at Ross's home in Benzie County. One of Ross's neighbors reported that she had seen Robertson, Eckstein, and a female the night before Ross's body was discovered. Deputy Troy Lamerson was the first officer responding to the scene and testified that upon his arrival, the garage door was open, but no vehicle was present. The deputy also received a report from the Mason County library that a

---

[1] MCL 750.505 (common-law offenses).

jar containing money had been stolen the same day that Ross was found murdered and that the persons who had stolen the jar signed a computer log with the names of Eckstein and defendant.

Robertson and defendant were later located in Las Cruces, New Mexico. They were arrested, and Deputy Lamerson, along with Michigan State Police Detective Sergeant Mark Henschell, went to New Mexico to interview defendant. During the interview, defendant stated that she had met Robertson on a bus two weeks before the interview. Robertson and Eckstein later picked her up from her father's house. The three traveled to the Traverse City area and spent the night in a camper behind the victim's house. Defendant further stated that she woke up about 9 a.m., but Robertson told her to stay in the camper and get some sleep and that he and Eckstein had some business to take care of and would be back in about half an hour. Upon their return, Robertson told defendant to get into the victim's car. She and Robertson left in the victim's car, with Eckstein following in his own vehicle.

Defendant further told the officers that they stopped at the Mason County library to check e-mail and Robertson stole the money jar. Defendant stated that it was at this point that Robertson told her what he and Eckstein had done to the victim. The three traveled in the two separate cars until reaching Oklahoma, when the victim's car developed brake trouble. Defendant wiped down the car at Robertson's direction, and then all three left in Eckstein's vehicle. Upon reaching the bus station in Oklahoma City, defendant and Robertson parted ways with Eckstein, with defendant and Robertson traveling to Las Cruces, where they were arrested.

Defendant first argues that the trial court erred in allowing her confession to be introduced before estab-

lishing the *corpus delicti* of the crimes. We disagree. We review a lower court's decision regarding *corpus delicti* for an abuse of discretion. *People v Burns.*[2] *Burns*[3] reviewed the general principles of the *corpus delicti* rule:

> The corpus delicti rule requires that a preponderance of direct or circumstantial evidence, independent of a defendant's inculpatory statements, establish the occurrence of a specific injury and criminal agency as the source of the injury before such statements may be admitted as evidence. *People v McMahan*, 451 Mich 543, 548-549; 548 NW2d 199 (1996); *People v Konrad*, 449 Mich 263, 269-270; 536 NW2d 517 (1995); *People v Metzler*, 193 Mich App 541, 547; 484 NW2d 695 (1992); *People v Brasic*, 171 Mich App 222, 227; 429 NW2d 860 (1988).

The question regarding what must be shown to establish the *corpus delicti* of accessory after the fact appears to be one of first impression in Michigan. An accessory after the fact is one who, with knowledge of the principal's guilt, renders assistance to hinder the detection, arrest, trial, or punishment of the principal.[4] The question becomes whether, to establish the *corpus delicti* of accessory after the fact, it is necessary to merely establish the *corpus delicti* of the underlying crime, or whether there must also be some evidence independent of the confession to establish that assistance was rendered to the principal.

Defendant cites cases from Arizona and California that suggest that there must, in fact, be a showing of some assistance being rendered in order to establish the *corpus delicti* of accessory after the fact. In *State v*

---

[2] 250 Mich App 436; 647 NW2d 515 (2002).

[3] *Id.* at 438.

[4] *People v Perry*, 460 Mich 55, 62; 594 NW2d 477 (1999).

*Hernandez*,[5] the Arizona Supreme Court held that, to establish the *corpus delicti*, it was necessary to show that the evidence, if true, would warrant a reasonable inference that some person committed the crime charged.[6] The Court concluded that, in the case of accessory to kidnapping, it was necessary to establish a reasonable inference that somebody concealed the kidnapping or harbored and protected the kidnapper. Similarly, in *In re IM*,[7] the California Court of Appeal concluded that there had to be some evidence of the defendant rendering assistance to the principal beyond the defendant's confession to rendering such assistance in order to satisfy the *corpus delicti* rule.

If we were to follow these cases and conclude that the *corpus delicti* rule requires in an accessory after the fact case that some evidence be introduced independent of the confession that showed that someone provided assistance to the principal, the evidence in the case at bar would be limited. There was certainly more than adequate evidence introduced establishing the *corpus delicti* of murder and unlawfully driving away an automobile. But evidence of assistance being provided by a third person was minimal at best. There was evidence of a female being seen with the principal. But that does little to establish assistance being rendered. Somewhat stronger is the evidence that defendant may have been involved in the theft of money from the library after the murder. Money would certainly provide assistance for flight from the jurisdiction. Given the relatively low evidentiary requirement established in *In re IM* regarding the showing of assistance, that evidence might be sufficient.

---

[5] 83 Ariz 279; 320 P2d 467 (1958).

[6] *Id.* at 282.

[7] 125 Cal App 4th 1195,1202-1204; 23 Cal Rptr 3d 375 (2005).

But, in any event, we believe that a requirement that there be some evidence of assistance having been rendered in order to establish the *corpus delicti* of accessory after the fact is unduly restrictive in light of the purpose of the *corpus delicti* rule. The rule exists to prevent the use of a confession to convict someone of a crime that did not occur.[8] Once it is established that a crime occurred, the defendant's statement may be introduced to establish the degree of guilt.[9] Here, it was established that a crime occurred. There was evidence presented that the victim had been murdered and her car taken. Thus, it was shown that a "specific injury or loss occurred and that some criminal agency was the source or cause of the injury."[10] Defendant's statement was then properly admitted to establish her involvement in the crime and her degree of culpability.

It is well established that a defendant's statement may be admitted to establish exactly which crime was committed: for example, whether a criminal homicide was a first-degree felony murder, a first-degree premeditated murder, a second-degree murder, or manslaughter.[11] Or, in *Ish*, the defendant's statement was used to establish a first-degree home invasion under circumstances in which the independent evidence would seem to have only established an entry without the owner's permission.

For these reasons, we conclude that the *corpus delicti* requirement for a charge of accessory after the fact is satisfied when the specific injury at the hands of a criminal agency, which is established by evidence independent of the confession, is that of the underlying

---

[8] *People v Ish*, 252 Mich App 115, 116; 652 NW2d 257 (2002).

[9] *Id.* at 117.

[10] *Id.* at 116.

[11] *People v Hughey*, 186 Mich App 585, 586-589; 464 NW2d 914 (1990).

crime committed by the principal. Once that has been established, as it was in the case at bar, the defendant's confession may then be introduced to establish that his or her degree of culpability is that of an accessory after the fact. Accordingly, in the case at bar, the trial court properly admitted defendant's confession under the *corpus delicti* rule.

Defendant's other argument on appeal is that jurisdiction did not properly lie in Benzie County because she rendered no assistance to Robertson and Eckstein in Benzie County. MCL 762.8 provides that jurisdiction properly lies in any county in which any act constituting part of the crime has occurred:

> Whenever a felony consists or is the culmination of 2 or more acts done in the perpetration thereof, said felony may be prosecuted in any county in which any one of said acts was committed.

It is important to note that this statute does not require in multiple-offender scenarios that a particular defendant have committed an act in the county in which the case is tried. One of the elements necessary to prove the crime of accessory after the fact is the commission of the underlying crime. See CJI2d 8.6(3). Thus, the commission of the murder and the UDAA in Benzie County by Robertson and Eckstein is an element of defendant's charge of being an accessory after the fact to those two crimes. That is, in the language of MCL 762.8, the offense of accessory after the fact is the culmination of two or more acts, one of which is the underlying felony committed by the principal. Therefore, a charge of accessory after the fact may be brought in the county in which the underlying felony occurred. Because the murder and the UDAA undisputedly occurred in Benzie County, jurisdiction properly lay in Benzie County for the accessory after the fact charges, even though defen-

dant's actual assistance (with the requisite guilty knowledge) may not have begun until after they had left Benzie County.

Similarly, to the extent that defendant argues that there was no jurisdiction within the state of Michigan at all because her acts of assistance occurred outside the state, MCL 762.2(2)(a) provides that Michigan has jurisdiction over any crime where any act constituting an element of the crime is committed within Michigan. Because, as discussed above, the underlying crimes are elements of accessory after the fact and the underlying crimes were committed in Michigan, this state has jurisdiction over the accessory charges.

Affirmed.