PEOPLE v COLLINS

PEOPLE v MASON

Docket Nos. 300644 and 300645. Submitted October 9, 2012, at Petoskey. Decided October 23, 2012, at 9:00 a.m.

In Docket No. 300644, Stormy Dean Collins was charged in the 95A District Court with the delivery of methylphenidate (Ritalin), MCL 333.7401(2)(b)(*ii*). The charge was filed on the basis of video footage from the Island Resort and Casino, in which Collins was seen handing something to another person from a pill bottle, following an exchange of money. When he was confronted by an officer from the Hannahville Tribal Police Department, Collins admitted that he had sold four Ritalin pills to a person in exchange for money. In Docket No. 300645, Rodney Farrell Mason was charged in the 95A District Court with possession with intent to deliver less than 5 kilograms of marijuana or fewer than 20 marijuana plants, MCL 333.7401(2)(d)(*iii*). Mason was arrested at the Island Resort and Casino after marijuana was found in his possession, following a search of his person. The arrests in both cases occurred at the Island Resort and Casino, which is an Indian casino, operating on Indian lands, in conjunction with a compact between the state of Michigan and the Hannahville Indian Community for the purposes of engaging in class III gaming and authorized by the Indian Gaming Regulatory Act, 25 USC 2701 *et seq*. Neither defendant is of Indian heritage. At the preliminary hearings for each defendant, defense counsel moved to dismiss the charges, arguing that the court lacked jurisdiction over the criminal proceedings. In both cases, the court, Jeffrey G. Barstow, J., denied the motions to dismiss and both defendants were ultimately bound over to the Menominee Circuit Court on their respective charges. In the circuit court, defense counsel renewed the motions to dismiss in both cases on the basis of lack of jurisdiction. The circuit court, Mary B. Barglind, J., granted both defendants' respective motions to dismiss, concluding that the federal government had exclusive jurisdiction over crimes committed on Indian lands by non-Indians against Indians or

where there was no victim. The prosecution appealed in both cases, and the Court of Appeals consolidated the cases.

The Court of Appeals *held*:

1. Michigan has statutory territorial jurisdiction over any crime in which any act constituting an element of the crime is committed within Michigan. Jurisdiction over crimes occurring in Indian country is governed by a complex patchwork of federal, state, and tribal law. State courts have exclusive jurisdiction over crimes committed by a non-Indian against a non-Indian in Indian country, as well as over victimless crimes committed by a non-Indian in Indian country. The circuit court erred by dismissing the charges against Collins and Mason because each defendant is a non-Indian, their respective drug offenses were committed on Indian land at the Island Resort and Casino, and the charged crimes were victimless.

2. Under 25 USC 2710(d)(3)(C)(i) and (ii), while a tribal-state compact may include provisions that apply to state criminal laws and allocate criminal jurisdiction between the state and Indian tribe as to the enforcement of laws, the laws must directly relate to, and be necessary for, the licensing and regulation of gaming activities. Collins and Mason were charged with drug offenses. The language of the Hannahville Indian Community-Michigan compact that provides that the casino is not regulated by the state, does not allocate jurisdiction over state drug offenses committed in the casino to the tribe because the drug laws do not relate to, and are not necessary for, the licensing and regulation of gaming activities. The language in the compact did not confer jurisdiction over criminal drug offenses to the tribe.

Reversed and remanded for reinstatement of the charges against both defendants.

1. JURISDICTION — STATE COURTS — CRIMES COMMITTED BY NON-INDIANS ON INDIAN LAND — CRIMES COMMITTED AGAINST NON-INDIAN VICTIM OR VICTIMLESS CRIME.

Michigan has statutory territorial jurisdiction over any crime in which any act constituting an element of the crime is committed within Michigan; jurisdiction over crimes occurring in Indian country is governed by a complex patchwork of federal, state, and tribal law; state courts have exclusive jurisdiction over crimes committed by a non-Indian against a non-Indian in Indian country, as well as over victimless crimes committed by a non-Indian in Indian country.

2. INDIANS — TRIBAL-STATE COMPACTS — ALLOCATION OF CRIMINAL JURISDICTION — LICENSING AND REGULATION OF GAMING ACTIVITIES.

Under 25 USC 2710(d)(3)(C)(i) and (ii), while a tribal-state compact may include provisions that apply to state criminal laws and allocate criminal jurisdiction between the state and Indian tribe as to the enforcement of laws, the laws must directly relate to, and be necessary for, the licensing and regulation of gaming activities.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Richard A. Bandstra*, Chief Legal Counsel, and *Louis B. Reinwasser*, Assistant Attorney General, for the people.

*Wayne Erickson* for Stormy D. Collins and Rodney F. Mason.

Amicus Curiae:

*Dawn S. Duncan* for the Hannahville Indian Community.

Before: MURPHY, C.J., and SAWYER and HOEKSTRA, JJ.

MURPHY, C.J. In these consolidated appeals defendant, Stormy Dean Collins, was charged with delivery of a controlled substance, methylphenidate (Ritalin), MCL 333.7401(2)(b)(*ii*) (Docket No. 300644), and defendant, Rodney Farrell Mason, was charged with possession with intent to deliver less than 5 kilograms of marijuana or fewer than 20 marijuana plants, MCL 333.7401(2)(d)(*iii*) (Docket No. 300645). With respect to both defendants, the alleged offenses occurred inside an Indian[1] casino, and there is no dispute that neither defendant is of Indian heritage. Although the district court denied motions by defendants to have the felony

---

[1] To be consistent with federal statutory terms and the relevant caselaw, we shall, for purposes of this opinion, use the term "Indian" instead of "Native-American."

charges dismissed for lack of territorial jurisdiction, the circuit court, following bindover, granted their renewed motions for dismissal that challenged the court's jurisdiction over the criminal proceedings. The circuit court ruled that Michigan state courts lack jurisdiction over offenses committed by non-Indians that take place on Indian lands situated within the state's boundaries. The circuit court concluded that in such situations federal courts have exclusive jurisdiction. On the basis of opinions issued by the United States Supreme Court, which constitute binding precedent, along with persuasive precedent emanating from numerous state and lower federal courts, we hold that state courts in Michigan have jurisdiction relative to a criminal prosecution in which a non-Indian defendant committed a "victimless"[2] offense on Indian lands or in Indian country. Accordingly, we reverse and remand for reinstatement of the charges against defendants.

Pursuant to a compact between the Hannahville Indian Community (the "tribe") and the state of Michigan (the "state") executed on August 20, 1993, and approved by the United States Department of the Interior on November 19, 1993, and under the authority of the Indian Gaming Regulatory Act, 25 USC 2701 *et seq.*, the tribe operates class III gaming activities on Indian lands at its Island Resort and Casino (the "casino"). See 58 Fed Reg 228 (November 30, 1993) (publishing notice of the federal government's approval of the compact between Michigan and the Hannahville Indian Community for the purpose of engaging in class III gaming); 25 USC 2703(8) (defining "class III gam-

---

[2] While we are hesitant to describe any drug offense as a "victimless" crime, the terminology is well-suited for purposes of discussing the jurisdictional issue posed to us and is used in other court decisions that we shall discuss later in this opinion.

ing"). With respect to defendant Collins, the prosecution had alleged that on July 2, 2009, as captured by video surveillance, Collins was in the casino, he pulled a pill bottle from his pocket, and he then could be seen handing something to another individual in exchange for money. The video was played at Collins's preliminary examination. At the hearing, Matthew Karaja, a police officer with the Hannahville Tribal Police Department, testified that he had been contacted by the casino's surveillance operator about the suspicious transaction involving Collins. Officer Karaja reviewed the video himself and decided to question Collins, who was still inside the casino. Collins informed Karaja that the pill bottle contained Ritalin that was prescribed for his daughter. On request, Collins gave the pill bottle to Karaja, which indicated on its label that it was a prescription for 60 20-milligram pills of Ritalin; 31 pills remained in the bottle and the prescription had just been filled that day. Collins told Karaja that the other person in the video seen making the purchase gave Collins $50 in exchange for 4 pills.

The preliminary examination for defendant Collins was continued to a later date, during which time Collins's attorney filed a motion to dismiss. Defendant Collins maintained that the district court lacked jurisdiction to adjudicate the criminal charge, given that the alleged offense occurred in an Indian casino, which was outside a state court's territorial jurisdiction. Collins's defense counsel, who also represented defendant Mason, subsequently filed a motion to dismiss in Mason's case, once again arguing that the district court lacked jurisdiction over the criminal proceedings. With respect to defendant Mason, the prosecution had alleged that on December 15, 2009, he was in the casino when police officers searched him and found approximately 3.88 ounces of marijuana in a front pocket of his pants.

According to a lower court brief filed by defense counsel, Mason was caught in a sting operation set up by the county sheriff's department in which Mason was coaxed into going to the casino and purchasing marijuana from a cousin. He was immediately arrested in the casino after the transaction was completed.

At the subsequent hearing on Collins's previously adjourned preliminary examination, the district court also entertained the two motions to dismiss. The district court denied the motions and then found that there was sufficient evidence to bind Collins over to the circuit court on the felony drug charge involving the Ritalin. With respect to the motions to dismiss, the district court first noted that if an Indian commits a serious offense on tribal property, the federal government would have jurisdiction and that if the crime is not serious, the tribal court would have jurisdiction. The district court then ruled that state courts have jurisdiction over non-Indian defendants who commit offenses on tribal property, which was the situation in both cases before the court.

At a later date, defendant Mason waived his right to a preliminary examination and was bound over to the circuit court on the felony drug charge involving marijuana. In the circuit court, defense counsel filed new motions to dismiss on behalf of both defendants, once again arguing that a state court lacked jurisdiction to adjudicate the charges. The circuit court issued a written opinion, concluding that it lacked jurisdiction and dismissing all charges. The circuit court first commented that tribal courts lack jurisdiction relative to a prosecution against non-Indians and that the federal government has exclusive jurisdiction with respect to crimes committed on Indian lands by non-Indians against Indians. The circuit court then ruled:

In conclusion, this Court can find no authority that gives the State Court jurisdiction for this matter. Since the Tribal Courts clearly do not have jurisdiction either, it would necessarily follow that the Federal Courts have exclusive jurisdiction over these criminal prosecutions. It appears the Federal Government has never chosen to share its jurisdiction over these matters with the State of Michigan. Defendants' Motions for Dismissal are, therefore, granted.

The prosecution appeals as of right.

Questions regarding the exercise of territorial jurisdiction by a state court in a criminal prosecution are reviewed de novo on appeal. See *People v Gayheart*, 285 Mich App 202, 207; 776 NW2d 330 (2009).

"The various courts and persons of this state now having jurisdiction and powers over criminal causes, shall have such jurisdiction and powers as are now conferred upon them by law, except as such jurisdiction and powers may be hereinafter repealed, enlarged or modified." MCL 762.1. Through the enactment of 2002 PA 129, the Michigan Legislature specifically provided that "[a] person may be prosecuted for a criminal offense he or she commits while he or she is physically located within this state or outside of this state if [certain enumerated] circumstances exist." MCL 762.2(*i*). In general, pursuant to MCL 762.2, "Michigan . . . has statutory territorial jurisdiction 'over any crime where any act constituting an element of the crime is committed within Michigan.' " *Gayheart*, 285 Mich App at 209-210, quoting *People v King*, 271 Mich App 235, 243; 721 NW2d 271 (2006). Here, the issue of territorial jurisdiction arises because, although defendants are charged with offenses allegedly committed by them while they were "physically located within the state," the offenses are said to have taken place on Indian lands, i.e., at the tribe's casino. There is no

dispute that the casino is located on Indian lands or in Indian country. See 25 USC 2703(4) (defining the phrase Indian lands); 18 USC 1151 (defining the phrase Indian country).

In *Oneida Co v Oneida Indian Nation of New York*, 470 US 226, 234-235; 105 S Ct 1245; 84 L Ed 2d 169 (1985), the United States Supreme Court observed that "[w]ith the adoption of the Constitution, Indian relations became the exclusive province of federal law."[3] Tribal sovereignty has been recognized by the United States Supreme Court since at least 1832; however, tribal sovereignty, which has a unique and limited character, can be restricted by Congress and " 'exists only at the sufferance of Congress and is subject to complete defeasance.' " *Taxpayers of Mich Against Casinos v Michigan*, 471 Mich 306, 319; 685 NW2d 221 (2004) (citation omitted).

With respect to jurisdictional issues in connection with crimes occurring in Indian country, jurisdiction "is governed by a complex patchwork of federal, state, and tribal law." *Duro v Reina*, 495 US 676, 680 n 1; 110 S Ct 2053; 109 L Ed 2d 693 (1990), superseded by statute on other grounds in 25 USC 1301(2) (stating that an Indian tribe has the inherent power to exercise criminal jurisdiction over all Indians). In the case at bar, we are presented with non-Indian defendants who allegedly committed "victimless" criminal offenses on Indian lands. "Criminal trial and punishment is so serious an intrusion on personal liberty that its exercise over non-Indian citizens was a power necessarily surrendered by the tribes in their submission to the overriding

---

[3] "Congress has broad power to regulate tribal affairs under the Indian Commerce Clause[.]" *White Mountain Apache Tribe v Bracker*, 448 US 136, 142; 100 S Ct 2578; 65 L Ed 2d 665 (1980), citing US Const, art I, § 8, cl 3.

sovereignty of the United States." *Id.* at 693. The *Duro* Court stated that "[f]or Indian country crimes *involving only non-Indians*, longstanding precedents of this Court hold that state courts have exclusive jurisdiction despite the terms of [18 USC] 1152."[4] *Duro*, 495 US at 680 n 1 (emphasis added), citing *New York ex rel Ray v Martin*, 326 US 496[; 66 S Ct 307; 90 L Ed 261] (1946), and *United States v McBratney*, 104 US 621[; 26 L Ed 869] (1881); see also *Draper v United States*, 164 US 240, 243-247; 17 S Ct 107; 41 L Ed 419 (1896) (holding that a federal district court lacked jurisdiction over a criminal prosecution of a non-Indian defendant who

---

[4] 18 USC 1152 provides:

Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.

This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

By using the phrase, "despite the terms of [18 USC] 1152," the Court in *Duro* appeared to suggest that established precedent issued previously by the Court perhaps conflicted with the statute. We decline to engage in an independent analysis interpreting 18 USC 1152, given that we "are bound by the decisions of the United States Supreme Court construing federal law," *Abela v Gen Motors Corp*, 469 Mich 603, 606; 677 NW2d 325 (2004), and any efforts on our part would therefore be fruitless. Moreover, in *United States v Wheeler*, 435 US 313, 324 n 21; 98 S Ct 1079; 55 L Ed 2d 303 (1978), the Supreme Court stated that 18 USC 1152, which makes federal enclave criminal law generally applicable to Indian country crimes, does not apply, despite its broad language, "to crimes committed by non-Indians against non-Indians, which are subject to state jurisdiction." It is for the United States Supreme Court to revisit the issue concerning the proper construction of 18 USC 1152 should it ever desire to do so, not this intermediate state appellate court.

was charged with murder of a non-Indian on an Indian reservation and that the defendant should be delivered to state authorities for prosecution).

In *United States v Antelope*, 430 US 641, 643 n 2; 97 S Ct 1395; 51 L Ed 2d 701 (1977), the United States Supreme Court explained that "[n]ot all crimes committed within Indian country are subject to federal or tribal jurisdiction . . . [;] a non-Indian charged with committing crimes against other non-Indians in Indian country is subject to prosecution under state law." See also *Williams v United States*, 327 US 711, 714; 66 S Ct 778; 90 L Ed 962 (1946) (noting that state courts have "jurisdiction over offenses committed on [a] reservation between persons who are not Indians," while federal courts would have jurisdiction where a defendant is not an Indian but commits an offense against an Indian). Bearing more specifically on the issue presented here, in *Solem v Bartlett*, 465 US 463, 465 n 2; 104 S Ct 1161; 79 L Ed 2d 443 (1984), the United States Supreme Court noted that, with respect to state criminal jurisdiction within Indian country, the "jurisdiction is limited to crimes by non-Indians against non-Indians, *and victimless crimes by non-Indians*." (Citation omitted; emphasis added.)

Citing cases such as *Duro, Solem, Antelope, Martin, Williams, McBratney*, and *Draper*, courts from numerous jurisdictions across the country have held that state courts have jurisdiction with respect to criminal prosecutions in cases involving non-Indian defendants who committed offenses on Indian lands against non-Indians or non-Indian defendants who committed offenses described as "victimless" on Indian lands. See, e.g., *United States v Langford*, 641 F3d 1195, 1197-1199 (CA 10, 2011) (stating that there is clearly no federal jurisdiction for a victimless crime committed in Indian

country by a non-Indian because the states possess exclusive criminal jurisdiction over such crimes); *State v Harrison*, 148 NM 500, 505-506; 238 P3d 869 (2010); *People v Ramirez*, 148 Cal App 4th 1464, 1474 n 9; 56 Cal Rptr 3d 631 (2007); *State v Sebastian*, 243 Conn 115, 130 n 24; 701 A2d 13 (1997); *State v VanderMay*, 478 NW2d 289, 290-291 (SD, 1991); *State v Snyder*, 119 Idaho 376, 377-379; 807 P2d 55 (1991); *State v Burrola*, 137 Ariz 181, 182; 669 P2d 614 (Ariz App, 1983). Indeed, we have not been directed to any contrary precedent.

We note that aside from 18 USC 1152, which we discussed earlier in this opinion, there are various federal statutes addressing territorial jurisdiction relative to Indians and Indian country; however, under the circumstances of the charges in this case, those statutes are simply not implicated. See 18 USC 1153 (referred to as the Indian Major Crimes Act, *Duro*, 495 US at 696, the statute gives federal courts exclusive jurisdiction over enumerated serious offenses committed by Indians within Indian country against another Indian or other person); 18 USC 1162 (providing certain identified states, excluding Michigan, with "jurisdiction over offenses committed by or against Indians in the areas of Indian country"); 25 USC 1321 ("The consent of the United States is hereby given to any State not having jurisdiction over criminal offenses committed by or against Indians in the areas of Indian country situated within such State to assume, with the consent of the Indian tribe . . . .").

Finally, we acknowledge that the compact between the tribe and the state provides, "THIS FACILITY IS NOT REGULATED BY THE STATE OF MICHIGAN." The charges filed against defendants, however, concern criminal drug offenses under a state statute, MCL 333.7401,

that is not regulatory in nature. See *California v Cabazon Band of Mission Indians*, 480 US 202, 209-212; 107 S Ct 1083; 94 L Ed 2d 244 (1987) (distinguishing between state criminal statutes and state regulatory statutes). While a tribal-state compact may include provisions applying to state criminal laws and allocating criminal jurisdiction between the state and Indian tribe as to the enforcement of such laws, the laws must directly relate to, and be necessary for, the licensing and regulation of gaming activities. 25 USC 2710(d)(3)(C)(i) and (ii). The laws at issue here are general drug laws and there are no provisions in the compact suggesting that the parties allocated jurisdiction to the tribe in regard to state drug offenses committed in the casino.

In light of the binding precedent from the United States Supreme Court, and the persuasive precedent issued by numerous state and lower federal courts, we hold that state courts have jurisdiction over the charges brought against defendants in Menominee County and that, in general, state courts in Michigan have jurisdiction over a criminal prosecution in which a defendant is a non-Indian, the offense is committed on Indian lands or in Indian country, and the offense is either victimless or the victim is not an Indian.

Reversed and remanded for reinstatement of the charges against defendants. We do not retain jurisdiction.

SAWYER and HOEKSTRA, JJ., concurred with MURPHY, C.J.