*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DAVID SEGARRA,

        Defendant-Appellant.

UNPUBLISHED
July 30, 2025
9:40 AM

No. 370730
Wayne Circuit Court
LC No. 19-005891-01-FH

Before: GARRETT, P.J., and RICK and FEENEY, JJ.

PER CURIAM.

Defendant, David Segarra, and his 15-year-old son, JS, offered to exchange money and a handgun for a Draco,[1] which 15-year-old DW offered for sale on the Snapchat app. The transaction did not go as planned, and DW shot JS in the face. Segarra then fatally shot DW to protect himself and JS. Segarra appeals by right his jury-trial convictions of felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced Segarra, as a second-offense habitual offender, MCL 769.10, to consecutive terms of 2 to 7½ years' imprisonment for the felon-in-possession conviction, and two years' imprisonment for the felony-firearm conviction. On appeal, Segarra argues that his convictions of both offenses violate his constitutional protections against double jeopardy. He also challenges the admission of his statements to the police, the jury instructions, and his sentence. Finding no error, we affirm.

## I. BACKGROUND

On Snapchat, DW offered to sell a Draco for $600. JS told Segarra about the Draco, and Segarra was interested. Segarra offered to exchange his Smith and Wesson handgun along with $250 for the Draco. JS communicated the offer to DW through Snapchat. DW arrived at the Detroit home where JS resided. DW was carrying a backpack, which Segarra believed contained the Draco. Segarra handed DW the Smith and Wesson so that DW could look at it. DW took the

---

[1] The record reflects that a Draco is a pistol-length version of an AK 47.

-1-

Smith and Wesson, pointed it and another small handgun at Segarra, and announced a robbery. JS rushed toward DW and pinned him against the side of the house. DW dropped the Smith and Wesson and fired the other gun. The gunshot struck JS in the face. Segarra picked up the Smith and Wesson and fired it at DW, who fell to the ground. Segarra checked on JS, but noticed that DW was moving around. Fearing that DW intended to remove the Draco from his backpack, Segarra fired two more rounds at DW, who died as a result of his injuries. Segarra looked inside the backpack and discovered that it contained a tire jack instead of the Draco.

The prosecutor charged Segarra with felon-in-possession and felony-firearm.[2] Videos of Segarra's statements to Lieutenant Paul Brown, the officer in charge of the case, were played for the jury during trial. During the second interview, Segarra admitted that he intended to trade his Smith and Wesson and cash in exchange for the Draco. The jury convicted Segarra of both charges. The trial court exceeded the sentencing guidelines range for the felon-in-possession conviction and sentenced Segarra as previously described. This appeal followed.

## II. *CORPUS DELICTI* RULE

Segarra argues that the trial court erred when it admitted Segarra's statements to Lieutenant Brown before the prosecution established the *corpus delicti* of the offense. Because Segarra failed to preserve this issue for appellate review, our review is limited to whether plain error affected his substantial rights. *People v Schumacher*, 276 Mich App 165, 180; 740 NW2d 534 (2007). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. "Reversal is warranted only if the plain error resulted in the conviction of an innocent defendant or if the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *People v Spaulding*, 332 Mich App 638, 653; 957 NW2d 843 (2020) (quotation marks and citation omitted).

"The *corpus delicti* rule requires that a preponderance of direct or circumstantial evidence, independent of a defendant's inculpatory statements, establish the occurrence of a specific injury and criminal agency as the source of the injury before such statements may be admitted as evidence." *People v Burns*, 250 Mich App 436, 438; 647 NW2d 515 (2002). In other words, "proof of the *corpus delicti* of a crime is required before the prosecution may introduce a defendant's inculpatory statements." *Schumacher*, 276 Mich App at 180. The purpose of the rule "is to prevent the use of a defendant's confession to convict him of a crime that did not occur." *People v Ish*, 252 Mich App 115, 116; 652 NW2d 257 (2002). "Once it is established that a crime occurred, the defendant's statement may be introduced to establish the degree of guilt." *People v King*, 271 Mich App 235, 241; 721 NW2d 271 (2006). The prosecution need not "present independent evidence of every element of the offense before a defendant's confession may be admitted." *Ish*, 252 Mich App at 117. Such a rule "would require that the entire crime be proved

---

[2] The prosecutor also charged Segarra with tampering with evidence, MCL 750.483a(5)(a), but dismissed the charge before trial.

before a confession could ever be admitted." *People v Konrad*, 449 Mich 263, 270; 536 NW2d 517 (1995).

The evidence presented during trial established the occurrence of a crime before the trial court admitted Segarra's statements to Lieutenant Brown. The evidence showed that the police arrived on the scene in response to a shooting. They observed DW lying on the ground, bleeding and unresponsive. Two handguns were on the ground nearby. In addition, JS was holding his face and bleeding profusely from his face. Accordingly, the evidence showed that a crime occurred.

Once the *corpus delicti* was established, the prosecutor was able to introduce Segarra's statements to Lieutenant Brown to establish Segarra's involvement in the incident and his degree of culpability. See *King*, 271 Mich App at 241. Although Segarra argues that the evidence was insufficient to establish the charged offenses absent his statements to Lieutenant Brown, the prosecutor was not required to present evidence of every element of the charged offenses before Segarra's confession could be admitted. *Ish*, 252 Mich App at 117. In fact, "[i]t is well established that a defendant's statement may be admitted to establish exactly which crime was committed[.]" *King*, 271 Mich App at 241. Therefore, it was not necessary that the evidence, apart from Segarra's statements to Lieutenant Brown, establish his guilt. Because the trial court did not violate the *corpus delicti* rule, Segarra has failed to establish plain error. Further, because no error occurred, trial counsel did not render ineffective assistance of counsel by failing to object to the admission of Segarra's statements on the basis of the *corpus delicti* rule. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

### III. INSTRUCTIONAL ERROR

Segarra next argues that he was entitled to a self-defense and defense-of-others jury instruction regarding the felon-in-possession charge and that he was denied his rights to present a defense and to a properly instructed jury when the trial court denied his requested instruction. We review for an abuse of discretion whether a requested jury instruction applies to the fact of a case. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Yost*, 278 Mich App 341, 353; 749 NW2d 753 (2008).

A criminal defendant is entitled to a properly instructed jury. *People v Ogilvie*, 341 Mich App 28, 34; 989 NW2d 250 (2022). "[J]ury instructions must include all the elements of the charged offenses and any material issues, defenses, and theories that are supported by the evidence." *People v McKinney*, 258 Mich App 157, 162; 670 NW2d 254 (2003). "Instructional errors that directly affect a defendant's theory of defense can infringe a defendant's due process right to present a defense." *People v Leffew*, 508 Mich 625, 643; 975 NW2d 896 (2022) (quotation marks and citation omitted). This Court reviews the jury instructions as a whole to determine whether error occurred. *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). "[A]n imperfect instruction is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights." *Id*. at 501-502.

Segarra contends that he possessed the Smith and Wesson handgun to defend himself and JS after DW shot JS in the face. The trial court agreed with Segarra that, after DW dropped the

Smith and Wesson, Segarra possessed it in order to defend himself and JS. But, the court denied Segarra's request that the court instruct the jury on self-defense and defense-of-others, reasoning that Segarra possessed the Smith and Wesson before the shooting and handed it to DW so that DW could look at it. The court's determination was proper and consistent with the evidence. Lieutenant Brown testified that the prosecutor did not charge Segarra with homicide because the shooting was justified. For that reason, the prosecutor did not focus on Segarra's possession of the weapon after DW dropped it and Segarra picked it up. Rather, the prosecutor focused on Segarra's possession of the weapon before DW dropped it. During opening statements, the prosecutor told the jury as follows:

> We are not here for a Homicide. We are not here for a shooting. We are here because the Defendant had a prior felony conviction which made him ineligible to possess a firearm on June 20, 2019. And it was his access to the gun prior to this deal is why [sic] we're here today.

During his second statement to Lieutenant Brown, Segarra admitted that he possessed the Smith and Wesson and agreed to trade it and cash for the Draco. Because Segarra's requested jury instruction was not consistent with the evidence and material to the theory of prosecution, the trial court did not abuse its discretion by denying the request.

## IV. DOUBLE JEOPARDY

Segarra next asserts that his convictions of both felon-in-possession and felony-firearm violate his double jeopardy protections. Because he failed to preserve his argument for this Court's review by raising it in the trial court, our review is limited to whether he has established plain error affecting his substantial rights. *Schumacher*, 276 Mich App at 180.

The Double Jeopardy Clauses of the United States and Michigan Constitutions protect a criminal defendant from "successive prosecutions for the same offense and multiple punishments for the same offense." *People v Dillard*, 246 Mich App 163, 165; 631 NW2d 755 (2001). If the case involves multiple punishments under two different statutes rather than successive trials, the question is whether the Legislature clearly intended to impose multiple punishments for the "same" conduct. *People v Mitchell*, 456 Mich 693, 695-696; 575 NW2d 283 (1998). "If so, there is no double jeopardy violation," *id*. at 595, and "the *Blockburger* test[3] has no application," *Dillard*, 246 Mich App at 166 n 2.

In *Dillard*, 246 Mich App at 166-168, this Court considered the double jeopardy challenge that Segarra raises in this appeal, i.e., whether punishments for both felony-firearm and felon-in-possession violate the federal and state constitutional double jeopardy provisions. This Court

---

[3] The *Blockburger* test examines the elements required to establish the criminal conduct proscribed. "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932).

looked to the language of the felony-firearm statute and determined that the Legislature clearly intended to allow a person convicted of felon-in-possession to be convicted of felony-firearm as well. *Id*. at 167-168. The felony-firearm statute states, in relevant part:

> (1) A person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony, *except a violation of section 223, 227, 227a, or 230*,[4] is guilty of a felony and shall be punished by imprisonment for 2 years.
>
> \* \* \*
>
> (3) A term of imprisonment prescribed by this section is in addition to the sentence imposed for the conviction of the felony or the attempt to commit the felony and shall be served consecutively with and preceding any term of imprisonment imposed for the conviction of the felony or attempt to commit the felony. [MCL 750.227b (emphasis added).]

The *Dillard* Court stated, "we need not look beyond the words of the felony-firearm statute to conclude that the Double Jeopardy Clauses of the United States and Michigan Constitutions are not violated." *Dillard*, 246 Mich App at 166. The Court further stated:

> The Supreme Court in *Mitchell* concluded that the four exceptions specifically mentioned within subsection 227b(1) were exclusive and "that the Legislature's intent in drafting the felony-firearm statute was to provide for an additional felony charge and sentence whenever a person possessing a firearm committed a felony other than those four explicitly enumerated in the felony-firearm statute." *Mitchell*, supra at 698. Because defendant's felon in possession charge unquestionably does not constitute one of the explicitly enumerated exceptions to the felony-firearm statute, we conclude that the Legislature clearly intended to permit a defendant charged with felon in possession to be properly charged with an additional felony-firearm count. [*Dillard*, 246 Mich App at 167-168 (footnote omitted).]

Segarra argues that the fact that felon-in-possession is not included as one of the exempt offenses in the felony-firearm statute cannot be dispositive of the Legislature's intent because felon-in-possession was not a crime when the Legislature enacted the felony-firearm statute in 1976. In *Dillard*, 246 Mich App at 168, this Court responded to that argument by stating that the Legislature could have simply amended the felony-firearm statute to include felon-in-possession as an exempt offense. This Court stated, "had the Legislature wished to exclude the felon in possession charge as a basis for liability under the felony-firearm statute, the Legislature would

---

[4] "The four exceptions are MCL § 750.223 (prohibiting unlawful sale of firearms), MCL § 750.227 (prohibiting carrying of a concealed weapon), MCL § 750.227a (prohibiting unlawful possession of a firearm by a licensee), and MCL § 750.230 (prohibiting alteration of identifying marks on a firearm)." *Dillard*, 246 Mich App at 167 n 3.

have amended the felony-firearm statute to explicitly exclude the possibility of a conviction under the felony-firearm statute that was premised on MCL § 750.224f." *Id.*

Segarra also maintains that the *Dillard* Court erroneously focused on the intent of the 1992 Legislature that enacted the felon-in-possession statute rather than the 1976 Legislature that enacted the felony-firearm statute. He submits that the language and history of the felony-firearm statute "strongly suggests that the 1976 Legislature would have exempted felon-in-possession from use as a predicate felony." We reject the notion that we should attempt to decipher what the 1976 Legislature would have done if felon-in-possession had been a crime in 1976. As we recognized in *Dillard*, 246 Mich App at 166, "[w]e may not speculate concerning probable intent of the Legislature beyond the words expressed in a statute." Moreover, "[c]riminal statutes . . . cannot be extended beyond their clear and obvious language." *People v Hofman*, 339 Mich App 65, 69; 981 NW2d 112 (2021) (quotation marks and citation omitted).

Further, "[w]e are bound to follow decisions of the Supreme Court unless those decisions have clearly been overruled or superseded." *People v Robar*, 321 Mich App 106, 117; 910 NW2d 328 (2017). We are therefore bound to follow *Mitchell*. Likewise, we are bound to follow the rule of law established in a published decision of this Court issued on or after November 1, 1990. MCR 7.215(J)(1); see also *People v Good*, 346 Mich App 275, 284; 12 NW3d 79 (2023). Therefore, we are bound to follow *Dillard*. Accordingly, Segarra has failed to establish that his convictions of both felony-firearm and felon-in-possession violate his double jeopardy protections.

## V. SENTENCING

Finally, Segarra argues that his above-guidelines sentence is disproportionate. We review a departure sentence for reasonableness under the abuse-of-discretion standard. *People v Dixon-Bey*, 340 Mich App 292, 295; 985 NW2d 904 (2022). "A trial court abuses its sentencing discretion when the sentence imposed by the trial court is disproportionate to the seriousness of the circumstances involving the offense and the offender." *Id*. at 296. "The existence of a departure factor is a factual question reviewed for clear error on appeal." *Id*. Clear error exists when we are "left with a definite and firm conviction that an error occurred." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015) (quotation marks and citation omitted).

The sentencing guidelines are advisory only. *People v Teike*, 348 Mich App 520, 538; 19 NW3d 733 (2023). Nevertheless, a sentencing court "must still consult the guidelines and take them into account during sentencing." *Id*. "An out-of-guidelines sentence may be imposed when the trial court determines that the recommended range under the guidelines is disproportionate, in either direction, to the seriousness of the crime." *People v Lampe*, 327 Mich App 104, 126; 933 NW2d 314 (2019) (quotation marks and citation omitted). "A number of factors have been deemed appropriate to consider when determining the proportionality of a departure sentence, including the seriousness of the offense; factors not accounted for by the guidelines, such as the prior relationship between the victim and the defendant, a lack of remorse, or a low potential for rehabilitation; and factors accounted for by the guidelines but given inadequate weight under the circumstances." *Dixon-Bey*, 340 Mich App at 296. "In imposing an out-of-guidelines sentence, a trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender"

than a sentence within the guidelines would have been. *People v Lydic*, 335 Mich App 486, 500-501; 967 NW2d 847 (2021) (quotation marks and citation omitted).

Segarra's sentencing guidelines range for his felon-in-possession conviction was 0 to 11 months. The trial court sentenced Segarra to a minimum of two years' imprisonment. The court justified the departure as follows:

> As it relates to the sentence for the Felon in Possession, the Court is going to depart from the guidelines. It will be an upward departure. And this is why I think it is appropriate and it will be proportionate. It's—it's because when we look at the facts of this case and—and as the Court heard the evidence in this particular case, Mr. Segarra, you were in the process of selling—trying to sell a gun to a minor child and buy a gun from a minor [child]. This isn't just your garden variety Felon in Possession case. This isn't just your garden variety, someone who has a prior felony, who has a gun in their possession and then gets stopped by the police, and they're charged with Felon in Possession, then the Felony Firearm is attached.

> I find that behavior to be abhorrent. I really do. Using your own child to communicate with another child to buy and sell guns is something that from this Court's—Court's perspective requires an upward departure. And it's not gonna be that much of an upward departure. I'm not giving the People what they asked for, but I'm not giving your attorney what he's asked for either. I'm not giving you probation.

Segarra argues that the trial court failed to justify the extent of the departure and explain why the sentence was more proportionate than a guidelines sentence. We disagree. The trial court noted that defense counsel requested a probationary sentence. The court also noted that the prosecution requested a particular minimum sentence. The prosecution submitted a sentencing memorandum requesting a five-year minimum sentence. The court rejected both of those options and imposed a two-year minimum sentence. The court explained that the two-year minimum sentence was proportionate because this case is not a "garden variety" felon-in-possession case, such as when a driver is stopped and has a firearm in their vehicle despite their inability to legally possess a firearm. Unlike a "garden variety" case, in this case Segarra used his child to communicate with another child for the purpose of buying and selling firearms. The court described Segarra's conduct as "abhorrent." Therefore, contrary to Segarra's argument, the trial court explained why it believed a departure would result in a more proportionate sentence, and it explained the extent of the departure imposed. Because Segarra's sentence is not disproportionate, he is not entitled to resentencing.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Michelle M. Rick
/s/ Kathleen A. Feeney