# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHERELLE LEEANN UNDERWOOD,

Defendant-Appellant.

UNPUBLISHED
February 9, 2016

No. 322877
Wayne Circuit Court
LC No. 12-006221-FC

Before: CAVANAGH, P.J., and RIORDAN and GADOLA, JJ.

PER CURIAM.

A jury convicted defendant of first-degree felony murder, MCL 750.316(1)(b), and first-degree child abuse, MCL 750.136b(2).[1] The trial court sentenced her to concurrent prison terms of life without parole for the murder conviction and 2 to 15 years for the first-degree child abuse conviction. Defendant appeals as of right. We affirm.

Defendant's convictions arise from the death of three-month-old Lamar Whitaker, who died while in defendant's care. Defendant gave conflicting accounts of the circumstances that led to Lamar's death, but ultimately told the police that Lamar was crying, and that she placed a pillow over his head until he stopped crying. The medical examiner who performed an autopsy on Lamar found no evidence of external or internal injuries or disease, and characterized the autopsy as "negative," meaning that it revealed "no significant findings or any findings to explain death," but clarified that Lamar did not die of natural causes. After considering the circumstances surrounding Lamar's death, including witness statements and defendant's statement, the medical examiner concluded that the cause of death was smothering.

On appeal, defendant first argues that the prosecution failed to establish the *corpus delicti* of first-degree murder because there was no evidence of a criminal agency independent of her statements to the police, and therefore, the trial court erred by denying her motion to quash the information and her motion for a directed verdict at trial. We disagree.

---

[1] The jury also convicted defendant of second-degree murder, MCL 750.317, as a lesser offense of first-degree premeditated murder, MCL 750.316(1)(a), but the trial court vacated that conviction at sentencing.

We review de novo a trial court's decision regarding a motion to quash to determine if the district court abused its discretion by binding over the defendant for trial. *People v Libbett*, 251 Mich App 353, 357; 650 NW2d 407 (2002). In effect, we sit in the same position as the circuit court and determine whether the district court abused its discretion by binding over the defendant. *People v Hudson*, 241 Mich App 268, 276; 615 NW2d 784 (2000). When reviewing a trial court's decision on a motion for a directed verdict, we review the record de novo to determine whether the evidence presented by the prosecutor was sufficient to allow a rational trier of fact to find that the elements of the charged offense were proved beyond a reasonable doubt. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006).

"[A] challenge to the admission of a defendant's statement under the *corpus delicti* rule constitutes a challenge to the admission of evidence, not to the sufficiency of evidence." *People v Harden*, 474 Mich 862, 862; 703 NW2d 189 (2005), citing *People v Konrad*, 449 Mich 263, 269; 536 NW2d 517 (1995). Therefore, we review for an abuse of discretion a challenge based on the *corpus delicti* rule. *People v King*, 271 Mich App 235, 239; 721 NW2d 271 (2006).

In *People v Burns*, 250 Mich App 436, 438; 647 NW2d 515 (2002), this Court set out the *corpus delicti* rule as follows:

> The corpus delicti rule requires that a preponderance of direct or circumstantial evidence, independent of a defendant's inculpatory statements, establish the occurrence of a specific injury and criminal agency as the source of the injury before such statements may be admitted as evidence.

The purpose of the *corpus delicti* rule is "to prevent the use of a confession to convict someone of a crime that did not occur." *King*, 271 Mich App at 241. A defendant's statement may be introduced "to establish the degree of guilt" after other evidence has shown that a crime occurred. *Id.*; see also *People v McMahan*, 451 Mich 543, 548-549; 548 NW2d 199 (1996). A court may consider circumstantial evidence and inferences arising from the evidence. *People v Brasic*, 171 Mich App 222, 227; 429 NW2d 860 (1988).

The *corpus delicti* of first-degree murder consists of two elements: (1) the death of the victim; and (2) some criminal agency as the cause of the death. *People v Williams*, 422 Mich 381, 392; 373 NW2d 567 (1985). Proof of the identity of the perpetrator is not part of the *corpus delicti* of a crime. *Konrad*, 449 Mich at 270.

The trial court did not err by denying defendant's motion to quash because the district court did not abuse its discretion by rejecting defendant's argument that the prosecution did not establish the *corpus delicti* of the crime of first-degree murder and binding defendant over for trial. The evidence clearly established the first element of the *corpus delicti*, the death of the victim. A preponderance of the evidence also established that Lamar's death was caused by some criminal agency. The medical examiner testified that the autopsy was negative because it produced no findings to explain Lamar's death. Lamar did not die of natural causes or disease. An investigation into the circumstances surrounding the death enabled the medical examiner to rule out accidental asphyxiation or sudden infant death syndrome (SIDS). The lack of any other explanation for Lamar's death led the medical examiner to conclude that Lamar died in defendant's bed due to smothering. The medical examiner relied on the autopsy and the

circumstances surrounding Lamar's death to conclude that some criminal agency caused the death. The prosecutor was not required to produce evidence to identify the perpetrator in order to establish the *corpus delicti* of the offense. *Konrad*, 449 Mich at 270.

Defendant relies on *McMahan*, 451 Mich 543, in support of her assertion that the prosecution did not establish the *corpus delicti* of first-degree murder by evidence other than her statements. In *McMahan*, the victim left her home in the defendant's company, and simply disappeared. Her body was never recovered. Several years later, the defendant was investigated in connection with the murder of a child; during the course of the investigation, the defendant confessed to killing the victim. *Id*. at 545-546. The trial court admitted the defendant's confession into evidence, and the jury convicted the defendant of second-degree murder. *Id*. at 547. This Court reversed on the ground that "the criminal agency component of the corpus delicti of the crime was not established independent of defendant's confession." *Id*. at 545. Our Supreme Court affirmed, finding that no evidence apart from the defendant's confession established that the victim's "presumed" death resulted from some criminal agency. *Id*. at 551-553.

*McMahan* is distinguishable from the instant case because the record in *McMahan* contained no evidence that the victim did not die a natural death. In this case, however, the medical examiner's autopsy ruled out natural causes or disease as the cause of Lamar's death. The evidence showed that Lamar died, and that his death did not result from natural causes, diseases, or accident. The medical examiner's autopsy and a reenactment of the circumstances surrounding Lamar's death constituted direct and circumstantial evidence, respectively, that a criminal agency caused Lamar's death. Therefore, the district court did not abuse its discretion by binding over defendant on the charge of first-degree premeditated murder, and the trial court did not err by denying defendant's motion to quash.

For the same reasons, we reject defendant's argument that she was entitled to a directed verdict on the ground that the *corpus delicti* of first-degree murder was not established. Moreover, the *corpus delicti* rule goes to the admission of evidence, and not to the sufficiency of evidence. *Harden*, 474 Mich at 862.

Next, defendant argues that although she was advised of her *Miranda*[2] rights, she did not understand them, and therefore, her waivers of her rights were invalid. In addition, defendant argues that her statements to police officers at the station and in her home were not knowingly, intelligently, and voluntarily given in light of all the circumstances. Defendant asserts that her immaturity and low intelligence level made it impossible for her to understand the questions put to her. Accordingly, defendant argues that the trial court erred in denying her motion to suppress her statements to the police.

We review de novo a trial court's determination that a waiver was knowingly, intelligently, and voluntarily made. *People v Gipson*, 287 Mich App 261, 264; 787 NW2d 126 (2010). We must review the entire record and make an independent determination, and will

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

affirm unless we are left with the definite and firm conviction that a mistake was made. Findings of fact will not be reversed unless they are clearly erroneous. *Id*. Questions of law are reviewed de novo. *People v Daoud*, 462 Mich 621, 629-630; 614 NW2d 152 (2000).

The United States and Michigan Constitutions guarantee the right against self-incrimination. US Const, Am V; Const 1963, art 1, §17. Information is considered incriminating if it presents a reasonable basis for the accused to recognize a danger from the disclosure, such that the information would be used in a criminal prosecution. *Hiibel v Sixth Judicial Dist Court of Nevada*, 542 US 177, 190; 124 S Ct 2451; 159 L Ed 2d 292 (2004). A statement made by an accused during a custodial interrogation is inadmissible unless the accused knowingly, voluntarily, and intelligently waived her Fifth Amendment rights. *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966). Whether a statement was knowingly, voluntarily, and intelligently made must be determined under the totality of the circumstances. *People v Tierney*, 266 Mich App 687, 707; 703 NW2d 204 (2005). The prosecution must prove by a preponderance of the evidence that the defendant's waiver was knowingly, intelligently, and voluntarily made. *Daoud*, 462 Mich at 634.

Police compliance with *Miranda* is necessary to establishing that a waiver was knowingly and intelligently made, but is not dispositive of the issue of voluntariness. *People v Godboldo*, 158 Mich App 603, 605-606; 405 NW2d 114 (1986). The court in determining voluntariness should consider the totality of the circumstances, including: the duration of the defendant's detention and questioning, the age, intelligence, education, and experience of the defendant, whether the defendant's arraignment was unnecessarily delayed, the defendant's mental and physical state, whether the defendant was abused or threatened, and any promises of leniency made to the defendant. *Gipson*, 287 Mich App at 265. No single factor is determinative. *Tierney*, 266 Mich App at 708.

Defendant contends that her waivers were invalid because she did not understand her *Miranda* rights. She also contends that her statements were not knowingly, intelligently, and voluntarily made. She asserts that her low level of intelligence made it impossible for her to understand the police questioning.

We conclude that the trial court did not clearly err in finding that defendant's statements were knowingly, intelligently, and voluntarily made. The gravamen of defendant's argument is that her low level of intelligence made it impossible for her to understand her rights and allowed the police to coerce her into making statements that were not accurate. A defendant's mental condition or other deficiency that renders her susceptible to coercion does not render the waiver involuntary absent evidence that the police exploited the deficiency. *People v Cheatham*, 453 Mich 1, 15-17; 551 NW2d 355 (1996) (BOYLE, J.). Defendant's statement that she did not understand her *Miranda* rights is not supported by the record. Two police officers testified that defendant read her rights aloud, did not ask questions about her rights, and indicated that she understood her rights. No testimony showed that defendant asked questions or expressed confusion when officers advised her of her rights.

Defendant's contention that the police coerced her into making statements that were not accurate, but that fit the scenario the police wanted to create, also is not supported by the record. The record shows that defendant made inconsistent statements regarding the incident. She told

the responding officer that Lamar did not fall from the bed, but initially told an investigating officer that Lamar did fall to the floor from the bed. She then acknowledged that she placed pillows on Lamar's head. She told an officer who interviewed her in her home that she placed pillows on Lamar's head, but did not assert that Lamar fell to the floor. Defendant first told a nurse who visited defendant's home and assisted in a reenactment of the event that Lamar did not fall to the floor, but then changed her story. The police officers and the nurse asked defendant questions to clarify her story. The record does not support defendant's assertion that she was coerced into saying what the authorities wanted to hear. Nothing in the record indicates that defendant's intelligence level, age, or lack of experience in dealing with the police caused her to change her story numerous times. The trial court did not clearly err in finding that, despite defendant's low intelligence level, she understood her rights and freely and voluntarily waived her rights.

Defendant also argues that the trial court abused its discretion by denying her motion to admit evidence that her psychological characteristics allowed her to be coerced into making a confession. Defendant asserts that the trial court, in ruling that she could not introduce evidence of coercion, misunderstood her argument that she did not make a confession and that any confession she did make was coerced. We disagree.

The trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008).

Defendant makes repeated reference to factors set out in *People v Kowalski*, 230 Mich App 464; 584 NW2d 613 (1998), in support of her argument that her psychological state was such that she did not in fact confess and was coerced into making the statements that she did. However, defendant does not identify the factors in *Kowalski* on which she relies. In *Kowalski*, this Court addressed the issue whether the defendant's confession was obtained in violation of his rights as set out in *Miranda* and *Edwards v Arizona*, 451 US 477; 101 S Ct 1880; 68 L Ed 2d 378 (1981). The *Kowalski* Court held that the defendant's confession was properly admitted because the defendant was not subjected to further interrogation before he gave his statement, and in fact the defendant unequivocally stated that he no longer wished to speak with an attorney and wanted to make a statement. *Kowalski*, 230 Mich App at 483-484. No such scenario took place in this case. Defendant was advised of her rights on several occasions, but at no time did defendant invoke her right to an attorney. Defendant always waived her rights and agreed to speak with the police. The basis for defendant's reliance on *Kowalski* is unclear.

Defendant's argument that the trial court should have found that defendant's psychological state was such that she was coerced into confessing that she killed Lamar is simply a restatement of her argument that her statements were not knowingly, intelligently, and voluntarily made. As stated above, that argument is without merit.

Next, defendant argues that the trial court abused its discretion by allowing the prosecutor to call two non res gestae witnesses who were listed on the prosecution's original witness list, but who were not endorsed before trial as required by MCL 767.40a(3). Defendant contends that the prosecutor's late endorsement of these witnesses prevented her from preparing adequately to

cross-examine the witnesses and resulted in prejudice. We disagree. We review for an abuse of discretion a trial court's decision to add witnesses to be called at trial. *People v Callon*, 256 Mich App 312, 325-326; 662 NW2d 501 (2003).

A res gestae witness is a person who witnessed some event in the continuum of a criminal transaction and whose testimony would aid in the development of the facts surrounding the transaction. *People v Long*, 246 Mich App 582, 585; 633 NW2d 843 (2001).

MCL 767.40a deals with witness lists and provides, in pertinent part:

> (1) The prosecuting attorney shall attach to the filed information a list of all witnesses known to the prosecuting attorney who might be called at trial and all res gestae witnesses known to the prosecuting attorney or investigating law enforcement officers.

> * * *

> (3) Not less than 30 days before the trial, the prosecuting attorney shall send to the defendant or his or her attorney a list of the witnesses the prosecuting attorney intends to produce at trial.

> (4) The prosecuting attorney may add or delete from the list of witnesses he or she intends to call at trial at any time upon leave of the court and for good cause shown or by stipulation of the parties.

The names Mike Glenn and Dianna Brooks appeared on the prosecution's original witness list submitted under MCL 767.40a(1), but were not included on the list of witnesses the prosecution intended to call at trial. On the morning of the first day of trial, the prosecutor sought permission to add the two witnesses to the list of witnesses she intended to call at trial, explaining that the names did not appear on the original endorsed witness list because it was not certain that the witnesses could be produced for trial. The trial court allowed the prosecution to amend the endorsed witness list and call the witnesses, but required that defense counsel have an opportunity to interview the witnesses before they appeared at trial.

The trial court did not abuse its discretion by allowing the prosecution to add Glenn and Brooks to the witness list and to call them at trial. MCL 767.40a(4) provides that the prosecution "may" add witnesses "at any time upon leave of the court and for good cause shown[.]" The term "may" indicates discretion. *People v Brown*, 249 Mich App 382, 386; 642 NW2d 382 (2002). A defendant must demonstrate that the trial court's ruling resulted in prejudice. *Callon*, 256 Mich App at 328. Defendant has not made such a showing. Defense counsel cross-examined both Glenn and Brooks. Defendant contends that while the prejudice created by the testimony is "hard to measure," the testimony was damaging because it showed her to be an immature person. However, defendant points to no exculpatory evidence that counsel could have gathered had counsel been granted a continuance after the trial court allowed the addition of the witnesses. Defendant has not shown that the trial court's decision to allow the prosecution to add Glenn and Brooks to the witness list and to call them at trial constituted an abuse of discretion.

Finally, defendant argues that the trial court abused its discretion by allowing the prosecutor to present as rebuttal evidence a recorded jail telephone call between herself and her boyfriend on which she could be heard using profane language, stating that she would assault another inmate who threw a volleyball at her, and telling her boyfriend to not see other women. Defendant contends that the recording was unduly prejudicial. We disagree.

We review for an abuse of discretion a trial court's decision to admit evidence. *Unger*, 278 Mich App at 217. As a general rule, all relevant evidence is admissible, and irrelevant evidence is not admissible. MRE 402. Evidence is relevant if it has any tendency to make a consequential fact more probable or less probable than it would be without the evidence. *People v Watkins*, 491 Mich 450, 470; 818 NW2d 296 (2012), quoting MRE 401. Evidence need not relate to an element of the charged crime or to an applicable defense in order to be material. *People v Brooks*, 453 Mich 511, 518; 557 NW2d 106 (1996) (citation omitted). However, relevant evidence can be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *People v Feezel*, 486 Mich 184, 198; 783 NW2d 67 (2010), quoting MRE 403. Unfair prejudice exists when there is a tendency that the evidence will be given undue weight by the jury. *People v Murphy (On Remand)*, 282 Mich App 571, 583; 766 NW2d 303 (2009).

In this case, the evidence was offered for its relevancy as rebuttal evidence. "Rebuttal evidence is limited to refuting, contradicting, or explaining evidence presented by the opposing party. The prosecution cannot introduce evidence on rebuttal unless it relates to a substantive rather than a collateral matter." *People v Humphreys*, 221 Mich App 443, 446; 561 NW2d 868 (1997) (citation omitted).

Defendant's theory of the case was that she was a non-violent, easily manipulated person, and that if she caused Lamar's death, she did so by accident, and any statement to the contrary was the result of manipulation by the police. Defendant's father testified that defendant was not a violent person, and that she would not threaten to harm a child. The recording, on which defendant was heard using aggressive language and threatening violence against another person, contradicted the evidence presented by defendant regarding her demeanor and thus refuted a central theme of defendant's defense. See *id*. Accordingly, the trial court did not abuse its discretion in admitting the evidence.

Affirmed.


/s/ Mark J. Cavanagh
/s/ Michael J. Riordan
/s/ Michael F. Gadola